(609 P.2d 204)

No. 50,579

CHARLES S. SIPPY and MARY JANE SIPPY, *Plaintiffs-Appellees—Cross-Appellants*, v. FRANK CRISTICH and PEGGY CRISTICH, *Defendants-Appellants—Cross-Appellees*, and HALES COMPANY REALTORS, *Defendant-Appellee*, and RAYMOND PERKINS, *Third Party Defendant-Appellee.*

Opinion filed March 28, 1980.

*Ronald S. Reuter*, of Wagner, Leek & Mullins, of Shawnee Mission, for appellants Frank and Peggy Cristich.

*Frank Taylor* and *Ron Bodinson*, of Payne & Jones, Chartered, of Olathe, for appellees Charles S. and Mary Jane Sippy.

*James H. Ingraham* and *Nathan C. Harbur*, of Breyfogle, Gardner, Davis & Kreamer, of Olathe, for appellees Hales Company Realtors.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

MEYER, J.: This is an appeal from a trial to the court. Judgment was granted for the plaintiffs, Charles S. and Mary Jane Sippy (Sippys), against the defendants, Frank and Peggy Cristich (Cristiches), in the amount of $5,278.27 for damages sustained by reason of a defective roof on the used residence purchased by the Sippys from the Cristiches through Hales Company Realtors (Hales) in 1976. The trial court also denied the Cristiches' cross-claim against Hales and third-party defendant Raymond Perkins (Perkins).

Perkins was the original owner of the home which was constructed in 1972. Perkins sold the property to the Cristiches in 1974. While Perkins occupied the premises, he had noticed at least three areas where the roof leaked. He attempted to have the roof leaks repaired. During the summer of 1974, Perkins listed the home for sale with Anderson & Associates Realty through Anderson's agent, Mrs. Goldie Haggard. Perkins later advised Mrs. Haggard that the roof leaks had been repaired and Mrs. Haggard, in turn, so advised the Cristiches. After the Cristiches moved into the residence, they noticed leaks and demanded of Perkins that he repair the leaks. At one point in their correspondence with Perkins, the Cristiches advised him that payments to him on a second mortgage he held on the residence would stop unless and until the roof leaks were repaired. Following the repair of the roof, water was run onto the same with a garden hose at and around the areas of the leaks. When no leaks occurred, the Cristiches made all mortgage payments which had been withheld. Perkins received no further complaints from the Cristiches relative to the roof leak problems.

In June of 1975, Frank Cristich took a job in Florida and moved there in July of 1975. Mrs. Cristich and the Cristich children continued to reside in the residence. Inasmuch as the Cristiches were going to move to Florida, they placed the home on the market. In connection with the sale, Mrs. Cristich prepared a brochure concerning the property, stating among other things

that the house had a commercial roofing. In November of 1975, Mrs. Cristich moved to Florida to join her husband and at that time listed the home for sale with Hales, who was represented by their agent, Mrs. Goldie Haggard. Mrs. Haggard was the same person who had negotiated the sale from the original owner to the Cristiches. Prospective purchasers, the Sippys, visited the home on several occasions. They observed certain stains on the ceilings and floor prior to entering into their purchase agreement, and were aware that there obviously had been leaks in the roof prior to entering into the contract. At one point Mr. Sippy indicated to Mrs. Haggard that he thought he would get an independent roofing contractor to view and inspect the roof to determine its condition prior to purchasing the home. The Sippys inquired of Mrs. Haggard concerning the condition of the roof and Mrs. Haggard told them on several occasions that the Cristiches had advised her that the roof had been repaired and was in good shape.

The Sippys entered into the contract of purchase on April 12, 1976. There were no provisions in the contract concerning the conditions of the roof, and the Sippys requested none. They did, however, request a provision concerning the repair of a hole in the garage ceiling which was included in the contract.

About a month after the Sippys took possession of the home there was a heavy rain and a considerable amount of water leaked into the house. The Sippys expended approximately $1550.50 in roof repairs at that time and later spent an additional $626.77 to repair cosmetic damage to the interior. Some two years later the Sippys obtained a proposal from Nugent Brothers Roofing and Siding Co., Inc., to install a new roof for $6,960.00.

On December 13, 1976, the Sippys filed suit against the Cristiches and against Hales alleging they had made false representations which had damaged the Sippys in the amount of $7,500.00. The Cristiches filed an answer and joined Perkins as a third-party defendant. They also filed a cross-claim against Hales. On the day of trial, over objection, the Sippys were permitted leave to amend their petition to allege damages in the amount of $10,000.00.

The Cristiches appeal from the decision against them, and the Sippys cross-appeal, claiming more damages and claiming that Hales should be liable.

"The necessary elements of fraud are: (1) that the representation was made as a statement of a material fact; (2) that the statement was known to be untrue by the party making it, or was made with reckless disregard for the truth; (3) that the party alleging fraud was justified in relying upon the statement; (4) that the party alleging fraud actually did rely upon the statement; and finally (5) that as a result of this reliance, the party alleging fraud was damaged." *Miles v. Love,* 1 Kan. App. 2d 630, 631-32, 573 P.2d 622, *rev. denied* 225 Kan. 845 (1977).

See also *Goff v. American Savings Association,* 1 Kan. App. 2d 75, 78, 561 P.2d 897 (1977).

In response to questions by the Sippys (made to the Cristiches through Mrs. Haggard), the Sippys were assured that the roof had been repaired and was in good condition. A statement that a roof has been repaired implies that the roof has been repaired satisfactorily. This statement was not a true statement, and therefore, the first element for a fraudulent action was met.

As to the second element of fraud, while the trial court did not find that the Cristiches made known false statements, it did find that the statements of the Cristiches were recklessly made under all the circumstances. There was substantial competent evidence to support this finding. The trial court based its finding of fraud upon the affirmative representation that the roof was in good condition or good repair.

This affirmative representation was reckless due to the fact that the roof had been in an almost constant state of repair until May 23, 1975. At the time of the sale to the Sippys in March and April of 1976, the Cristiches had not been in the house for several months, and given the history of problems and the knowledge that repairs had failed in the past, such statement was reckless.

As to the third element of fraud, appellant argues that the Sippys were not justified in relying on the statement in that Mr. Sippy had expressed concern about the roof on several occasions, had noticed water spots, and, in addition, had personally gone to the roof to inspect it.

In *Goff v. American Savings Association,* 1 Kan. App. 2d at 79, it was held:

"Many factors must be considered in determining whether a statement is a matter of fact or matter of opinion and whether or not a plaintiff has a right to rely on the statement. Among the facts the court will take into consideration are the intelligence, education, business experience and relative situation of the parties; the general information and experience of the persons involved as to the nature and use of the property; the habits and methods of those in the industry or profession involved; the opportunity for both parties to make an independent

investigation as well as the nature, extent and result of any investigation so made; and any contract the parties knowingly and understandingly entered into."

The court further held, at page 82:

" 'A recipient of a fraudulent misrepresentation is justified in relying upon its truth without investigation, unless he knows or has reason to know of facts which make his reliance unreasonable'. . . [T]he test is whether the recipient has 'information which would serve as a danger signal and a red light to any normal person of his intelligence and experience.' " [Citing from Restatement (Second) of Torts § 540, p. 10, and comments to § 540 at p. 12.]

Here, the fraud did not consist in the Cristiches advising the Sippys that the roof had never leaked; the fraud occurred when they claimed the roof had been repaired and was in good condition. Because of this, it is of no material significance that there were water stains upon the carpet or rug. The Sippys did, in fact, follow up on the danger signals they observed and made repeated inquiries concerning the roof and whether the leaks had been repaired. Mrs. Haggard called the Cristiches (then in Florida) and was assured by them of the roof's good repair. This was related by Mrs. Haggard to the Sippys as a statement of the Cristiches. Moreover, they were told that some of the stains were caused by watering plants.

As to the statement that the Sippys had inspected the roof, the testimony established that the defects were structural and that inspection of the roof without tearing into it would not disclose its deficiencies. Mr. Sippy is, therefore, not precluded in this action by the fact that he went to the roof to inspect it. Mr. Sippy testified the reason he did not get an independent inspection made was because he was assured that the roof was all right. Without the knowledge of the extensive and prolonged attempts to repair the roof, there was no reason to disbelieve the representation that the roof had been repaired and was now in good condition.

We conclude that the third requirement for an action in fraud has been met in that the Sippys were justified in relying on the statement of the Cristiches related to them by Mrs. Haggard.

As to the fourth element, the Sippys, in fact, relied upon the representations of the Cristiches as they purchased the home after being assured on at least two occasions that the roof had been repaired.

The fifth element, the damage, is obvious.

In addition to the existence of a fraudulent misrepresentation, the trial court based its finding of fraud upon a fraudulent concealment.

In *Jenkins v. McCormick,* 184 Kan. 842, 844-45, 339 P.2d 8 (1959), the court cites 23 Am. Jur. 857, § 80, as follows:

"[I]f one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain."

This rule has been applied to any vendor or lessor who fails to reveal known defects in property. *Griffith v. Byers Construction Co.,* 212 Kan. 65, 510 P.2d 198 (1973); *Service Oil Co., Inc. v. White,* 218 Kan. 87, 542 P.2d 652 (1975).

"[A]ctual knowledge of the defect is required in order to support a claim of fraudulent concealment." *Miles v. Love,* 1 Kan. App. 2d at 632.

In the instant case, the trial court based its findings of fraudulent concealment on the failure of the Cristiches to reveal the history of past problems with the roof. It leaked off and on from the time the Sippys purchased the house up until May, 1975. While cases have specifically held that known defects must be revealed, the question presented here is whether poor results in the repair of past defects must be revealed. Generally, the test is whether the fact not revealed is a material fact. As was said in *Griffith v. Byers Construction Co.,* 212 Kan. at 73:

"[T]he fraudulent concealment to be actionable has to be material to the transaction. A matter is material if it is one to which a reasonable man would attach importance in determining his choice of action in the transaction in question."

The facts in this case which were not revealed by the Cristiches to the Sippys were that the roof had leaked for a period of over a year and that several attempts to repair the roof were unsuccessful. The facts presented here were sufficient evidence that the silence related to a material fact. Had the Sippys known of the extent of the problems, they might not have purchased the house, especially in view of their repeated inquiries about the roof and the water spots they observed. Rather than admitting the problem, the Cristiches continued to make assurances that the roof was in good repair and good condition. The Cristiches argue that

the fact they stated the roof had been repaired constitutes notice that there had been prior leaks. The trouble with this argument, however, is that it by no means reflects the seriousness of the problem which really was that repeated attempts in the past to repair the leaks had failed.

We conclude there was substantial competent evidence to show an actionable fraudulent concealment.

We now turn to the cross-appeal. The first claim was that there was no substantial competent evidence to support the trial court's finding that Hales was not liable for fraud. Mrs. Haggard was the real estate agent at the time the Cristiches bought the property and at the time they contracted to sell to the Sippys. It should be noted, however, the Sippys were not relying upon what Mrs. Haggard told them from her personal knowledge, but relied rather upon the fact that she was quoting the Cristiches as to the condition of the roof. On one occasion, Mrs. Haggard even called the Cristiches (then in Florida) about the condition of the roof while the Sippys were present.

In the case of *Nordstrom v. Miller,* 227 Kan. 59, Syl. ¶ 1, 605 P.2d 545 (1980), it was specifically held:

"Where the owner of land, by misrepresentation as to its character, effects a sale, agents who have acted for him in the matter are not rendered personally liable to the buyer for the fraud merely by reason of their having innocently and in good faith repeated to him the false statements concerning the property made to them by the seller."

The court in *Nordstrom* required an element of intent to deceive on the part of the agent in order to be held liable. Clearly this absolves the agent (and therefore Hales) of liability for repeating the statements that the roof was in good repair.

The second claim on the cross-appeal is that the trial court erred in failing to allow the full amount of the Sippys' damages.

The Sippys had presented evidence of damages for repairs to the roof of approximately $1550.50, and for $626.77 for interior redecorating. They also presented an estimate of the cost for replacing the roof of $6,960.00, or a total sum of $9,137.27. The Sippys further testified that the house was worth $110,000.00 with the faulty roof, but would be worth $120,000.00 otherwise, or a difference of $10,000.00. They admitted, however, that the $110,000.00 figure was based on the $9,137.27 replacement and repair cost presented above, and that the $120,000.00 figure was

the price at which they purchased the house. The Sippys there-fore argue that the trial court should have awarded the full amount of damages proved by them because their testimony was uncontroverted. The trial court explained its award by stating that the court could not in the interest of justice and equity accept these figures without mitigation. Instead it used the repair figure of $1,550.50 to about ⅓ of the roof and applied that figure to the remaining roof. This resulted in a figure of $3,101.00 for addi-tional work on the other ⅔ of the roof. Thus, the court allowed $4,651.50 for estimated repairs to the entire roof plus past ex-penses for interior redecorating of $626.77, or a total judgment of $5,278.27 for the Sippys.

Generally, in breach of contract actions where a contractor has not subtantially performed a contract, the damages are measured by the reasonable cost of repairs to correct defects or omissions. See *Mahoney, Inc. v. Galokee Corporation,* 214 Kan. 754, 757, 522 P.2d 428 (1974).

Kansas has followed the benefit of the bargain rule in deter-mining damages for fraud. *Perry v. Schoonover Motors,* 189 Kan. 608, Syl. ¶ 3, 371 P.2d 152 (1962); *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, Syl. ¶ 3, 527 P.2d 1026 (1974).

"In a damage action by a purchaser for fraud inducing the purchase, the measure of damages is the difference between the actual value at the time of sale and the value it would have had if the representations had been true." *Fox v. Wilson,* 211 Kan. 563, Syl. ¶ 11, 507 P.2d 252 (1973).

"In a fraud action where no evidence is introduced by either party to indicate that if the seller's representations had been true the property would have had any different value than the sales price, that price may be utilized as the 'represented' value of the property in assessing damages." Syl. ¶ 15.

"The opinion testimony of the owner of real or personal property is admissible to establish its value." Syl. ¶ 12.

The estimates given by the Sippys would generally be compe-tent to establish the difference between the actual value at the time of sale and the value it would have had if the representations had been true. Such evidence, however, where it is based upon a total replacement of the roof, is not competent absent a finding of the trial court that such replacement is necessary.

Further, in other jurisdictions, it has been held that evidence of cost of repairs is an accurate measure of the buyer's damages in misrepresentation actions.

In Colorado, where the benefit of the bargain rule is applied, it

was stated in *Slack v. Sodal,* 190 Colo. 411, 414, 547 P.2d 923 (1976), as follows:

"[R]easonable expenditures of a buyer to bring property into conformity with the implied warranty may be an accurate measure of the buyer's damages and is another way of arriving at an amount representing the difference in actual value and that value as represented."

We conclude that it is implicit in the ruling of the trial court that the court did not believe it was necessary to replace the roof. Therefore, any evidence based on the cost to replace the roof rather than on the expense of repairing it was incompetent. This would include the Sippys' estimate of the actual value of the house. The only substantial competent evidence before the trial court (given the premise that the trial court did not believe the roof would need to be replaced as distinguished from repaired) was the figures $1,550.50 and $626.77; therefore, the trial court's method of determining damages based on these figures was proper.

As noted above, the rule of damages in Kansas in fraud cases is the loss of bargain rule. However, where the only competent evidence is the cost of repairs, this may be accepted by the trial court as evidence of the difference between the value as represented and the actual value.

Affirmed.