(736 P.2d 465)

No. 58,501

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN, Attorney General, *Plaintiff-Appellee,* v. GAF CORPORATION, *et al., Defendant-Appellant,* and W. R. GRACE & CO., *et al., Defendants.*

Opinion filed April 23, 1987.

*Jerry D. Bogle,* of Gott, Young & Bogle, P.A., of Wichita, for appellant.

*William E. Enright,* of Scott, Quinlan & Hecht, of Topeka, for appellee.

Before BRISCOE, P.J., PARKS, J., and PORTER K. BROWN, District Judge, assigned.

PARKS, J.: The plaintiff, State of Kansas, initiated this action against GAF Corporation and several other defendants after a roof constructed on a building at the Kansas Neurological Institute (K.N.I.) was found to be defective. Prior to trial, all defendants except GAF settled with the State. The suit against GAF proceeded to jury trial on the State's claims for breach of express warranty, negligence, and fraud. The jury returned a verdict for the plaintiff for $100,705.42 in actual damages and $1,000,000 punitive damages. GAF appeals.

In 1972, the plaintiff began planning the construction of a building at K.N.I. known as the Flint Hills Lodge (Lodge). The state architect in charge of the project specified the roof would consist of a structural concrete roof deck covered by a lightweight insulating concrete called Zonolite which was in turn covered by a built-up roof membrane manufactured by GAF. Zonolite is manufactured by W. R. Grace & Company (Grace) and the specifications prepared by both Grace and GAF regarding their respective roofing products indicate that the two substances may be used together over structural concrete.

The construction of the Lodge was undertaken with Lee & Bueltel Construction Company, Inc., acting as general contractor and Jack Rinehart, d/b/a Rinehart Roofing Co., winning the roofing subcontract. The roof was constructed according to the plans and the GAF membrane was applied in conformity with the manufacturer's specifications. GAF made an on-site progress inspection of the built-up roof membrane on October 15, 1974, and the installation was completed on April 28, 1975. Following Rinehart's application for a guarantee on the membrane, GAF made a final inspection on April 20, 1976, and issued its written guarantee on May 6. This guarantee provided that the roofing membrane and base flashing were guaranteed for ten years against leaks caused by various circumstances. GAF promised to make any necessary repairs free of charge with exclusions for leaks caused by structural failures in the base or insulation over which the GAF membrane was applied. The guarantee also included the proviso that the owner must give written notice of any leaks to GAF's nearest district office within 30 days of discovery. The application for the guarantee executed by Rinehart included the following provision:

"In consideration of the Guarantee to be furnished by GAF on the GAF Built-Up Roof applied by the undersigned to the premises as described above, the undersigned roofing contractor agrees that in the event GAF, within a period of two (2) years from date of completion of the roof, is called upon to make any repairs under the Guarantee issued by GAF and which covers the above roof, the undersigned will, at its own expense, investigate any report of leaks, make all necessary repairs if repairs are required and directed by GAF, cut and repair as directed by GAF any blisters or buckles and if the trouble is not due to defects in the roof, the undersigned will use its best efforts to satisfy the owner to that effect."

The roof began leaking shortly after it was completed but, throughout 1975 and 1976, all leaks were reported directly to Rinehart. Rinehart responded by making repairs free of charge on five or six occasions. GAF received written notice of the leaking in February 1977 and, at GAF's request, Rinehart completed additional repairs. The problems of the leaky roof continued unabated so that water literally poured into the Lodge, causing extensive interior damage and considerable inconvenience. By the latter part of 1977, Rinehart concluded that the

roof could not be repaired and would have to be replaced. Various GAF personnel inspected the roof and, after observing cracks in the Zonolite substrate coinciding with the leaks in the membrane, concluded the leaks were not caused by a defect in the membrane and, thus, were not covered by the guarantee. GAF refused to accept responsibility for the leaky roof and the plaintiff decided a new roof would have to be constructed.

Vincent Roofing Co. contracted to make temporary repairs and ultimately to construct a new roof for the Lodge. Plaintiff claimed the following damages as a result of the leaking and repair:

| | |
|---|---:|
| Emergency Roof Repairs | $ 6,265.92 |
| Architects' Fees for Reroofing | 3,669.50 |
| Reroofing | 109,600.00 |
| Interior Damage | 20,000.00 |
| TOTAL | $139,535.42 |

Plaintiff filed suit against all parties connected with the roof construction including GAF, Grace, Lee & Bueltel Construction, and Jack Rinehart, since there was considerable controversy over the cause of the roof failure. However, in February 1984, plaintiff took the deposition of William Barnett, a retired GAF employee. Barnett's testimony indicated that GAF had been concerned since 1974 with the high rate of failure among roofs in which the GAF membrane was used over Zonolite. Barnett stated that the GAF personnel responsible for drafting the specifications controlling the use of the GAF membrane became convinced in the mid-70's that the membrane should not be used over lightweight concrete decks and consequently scaled back to minimal the specifications detailing the manner of using the GAF product in such a fashion. Barnett testified that protests from Grace concerning this abandonment of their product caused GAF to reinsert endorsing provisions in the GAF specifications in fear of a lawsuit by Grace.

After filing a motion to amend its petition to state a cause of action for fraud against GAF based on the deposition testimony of Barnett, plaintiff reached settlement with all of the other defendants. The amended petition was permitted and the trial proceeded with GAF as the only defendant. GAF basically

denied any responsibility for the faulty roof, contending that leaks in its membrane were caused by cracks in the Zonolite which were in turn caused by excessive moisture in the Zonolite. GAF sought to shift blame principally to Grace contending Grace knew that use of its product over structural concrete did not allow sufficient venting to permit the Zonolite to dry. Defendant denied any fraud by its actions and contended that it was not until 1977 that the GAF personnel responsible for specifications decided the use of the GAF membrane over Zonolite should be severely restricted. Plaintiff relied on the testimony of Barnett concerning the state of GAF's knowledge. Plaintiff also presented expert testimony that the leaks in the Lodge roof were caused by the low tensile strength of the GAF membrane and were unconnected to the cracks in the Zonolite.

The jury returned a verdict on special questions finding defendant guilty of breach of its express warranty, negligence, and fraud. The jury concluded defendant was 70% at fault for the damages sustained by plaintiff and found total damages of $100,705.42. Since the jury also found defendant's conduct to have been fraudulent, it concluded plaintiff was entitled to punitive damages of $1 million. Defendant challenges various facets of the resulting judgment.

The two instructions given by the trial court on fraud were taken from PIK Civ. 2d 14.40 and 14.42. Instruction No. 4 (14.40) states the elements of active fraud or misrepresentation while Instruction No. 5 (14.42) describes fraudulent concealment as follows:

Instruction No. 4

"The essential elements required to sustain an action for fraud are:

1. That false (or untrue) representations were made as a statement of existing and material fact.

2. That the representations were known to be false (or untrue) by the party making them, or were recklessly made without knowledge concerning them.

3. That the representations were intentionally made for the purpose of inducing another party to act upon them.

4. That the other party reasonably relied and acted upon the representations made.

5. That the other party sustained damage by relying upon them.

A representation is material when it relates to some matter that is so substantial as to influence the party to whom it was made."

and
Instruction No. 5

"The plaintiff claims fraud through silence on the part of the defendant. To constitute fraud by silence the plaintiff must prove:

1. The defendant has knowledge which plaintiff did not have and which the plaintiff could not have discovered by the exercise of reasonable diligence;
2. The defendant was under an obligation to communicate the true state of facts to the plaintiff;
3. The defendant intentionally failed to communicate to plaintiff the true state of facts;
4. The plaintiff relied upon the defendant to communicate the true state of facts to him; and
5. The plaintiff sustained damages as a result of the defendant's failure to communicate this to the plaintiff."

During deliberations, the jury asked the following question: "In order to find fraud by silence do all five items on page 4 and all items on page 5 need to be present[?]" The court responded in writing, after hearing the objections of defendant, as follows:

"In order to find fraud by silence, all five items in Instruction No. 5 must be proved. Instruction No. 4 is not applicable to fraud by silence."

Defendant objected to this answer, contending that Instruction No. 5 failed to independently state all of the elements of fraud because it failed to require the jury to find defendant's superior knowledge related to a *material* fact or to require reasonable reliance by the plaintiff. Defendant argued, and now claims on appeal, that when Instructions 4 and 5 were given together, this defect in 5 was remedied by 4, but if Instruction 5 were to stand alone, it would not include all of the necessary elements of fraudulent concealment. Plaintiff contends that defendant waived any defect in Instruction No. 5 because it did not object to it on the ground now raised.

In order for silence regarding a defect to constitute fraud, the seller must have knowledge of a material defect that is not within the fair and reasonable reach of the buyer and which is not discoverable by reasonable diligence. *Green v. Geer*, 239 Kan. 305, 308, 720 P.2d 656 (1986). The PIK instruction fails to characterize the knowledge undisclosed by the defendant as knowledge of a material fact or defect although the element of materiality has prominently figured in several recent cases. *Lynn v. Taylor*, 7 Kan. App. 2d 369, 371-72, 642 P.2d 131, *rev. denied*

231 Kan. 801 (1982); *Sippy v. Cristich*, 4 Kan. App. 2d 511, 516-17, 609 P.2d 204 (1980). In addition, the instruction given by the court simply requires the plaintiff to prove he relied upon the defendant to communicate the true facts without additionally requiring proof that this reliance was reasonable. Thus, the instruction dictates the use of a subjective standard in assessing the plaintiff's state of mind when an objective standard is called for by the case law on fraud. For example, in *Goff v. American Savings Association*, 1 Kan. App. 2d 75, 561 P.2d 897 (1977), the court held that fraud cannot be predicated upon what as a matter of law amounts to an expression of opinion and which cannot reasonably be understood to be anything else. The court also said, in an action for fraud, the plaintiff may not reasonably rely on an alleged fraudulent statement where the plaintiff has knowledge of facts which would serve as a danger signal to any normal person of equal intelligence and experience. *Goff*, 1 Kan. App. 2d 75, Syl. ¶¶ 2 and 3. Since the fraud committed by a failure to disclose is still fraud, the element of reasonable reliance on the information supplied by the defendant is a critical element. See *Sippy*, 4 Kan. App. 2d at 514-15.

PIK Civ. 2d 14.42 (1986 Supp.) is also problematic because it directs the jury to consider whether the plaintiff has proven the defendant was under an obligation to disclose the true state of the facts without any guidance when such an obligation exists. In *Sippy*, 4 Kan. App. 2d at 516, the court cited the rule defining the scope of this obligation as follows:

"[I]f one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak . . . ." See *Jenkins v. McCormick*, 184 Kan. 842, 844-45, 339 P.2d 8 (1959).

The PIK instruction states the defendant must have knowledge which the plaintiff did not have and could not have discovered with the exercise of reasonable diligence, but the instruction does not tie this superior knowledge to the obligation to speak.

Defendant contends the instruction is also flawed because it fails to indicate that the knowledge possessed by the defendant must be actual knowledge. However, while actual knowledge is an element of fraudulent concealment, the requirement that the

defendant *intentionally* fails to disclose that knowledge implies the knowledge must be actual. If knowledge is only constructive, it cannot be intentionally concealed or undisclosed.

The elements missing from PIK Civ. 2d 14.42 were actually supplied to the jury in this case because the court also gave PIK Civ. 2d 14.40. However, when in response to the jury's question the court instructed the jury to consider only the contents of Instruction No. 5 to find fraud by silence, the benefit of the general fraud instruction was lost. The definition of "material" and the requirement of reasonable reliance included in Instruction No. 4 were not available to redeem the flaws in Instruction No. 5. Indeed, the contrast between the two instructions and the instruction to the jury not to consider No. 4 may well have intensified the impact of the absence of the elements from No. 5.

While it appears PIK Civ. 2d 14.42 (1986 Supp.) was intended to stand on its own to define fraudulent concealment or non-disclosure (PIK Civ. 2d 14.42 [1986 Supp.], Notes on Use), we hold that the instruction is incomplete and the trial court's instruction to the jury to consider only the elements listed in Instruction No. 5 in considering the fraud claim constitutes prejudicial error. Because of the error in this instruction, we conclude that the defendant is entitled to a new trial on the issue of fraud. In view of this conclusion, we need not consider defendant's challenges to the propriety and amount of the punitive damage award which was premised on the finding of fraud. However, we will consider the argument that the court erred in refusing to grant its motion to dismiss plaintiff's fraud claim as being barred by the statute of limitations.

The trial court denied the motion to dismiss the fraud claim, concluding that the statute of limitations did not apply to the State. K.S.A. 60-521 describes the circumstances under which statutes of limitations apply to the State as follows:

"As to any cause of action accruing to the state, any political subdivision, or any other public body, which cause of action arises out of any proprietary function or activity, the limitations prescribed in this article shall apply to actions brought in the name or for the benefit of such public body in the same manner as to actions by private parties, except in (1) actions for the recovery of real property or any interest therein, or (2) actions to recover from any former officer or employee for his or her own wrongdoing or default in the performance of his or her duties."

This court in *State ex rel. Schneider v. McAfee*, 2 Kan. App. 2d 274, 275, 578 P.2d 281, *rev. denied* 225 Kan. 845 (1978), held that since causes of action arising out of governmental functions are omitted from K.S.A. 60-521, statutes of limitation do not apply to such actions. This holding and the rule that statutes of limitations do not run against the State unless specifically provided by statute have been repeatedly relied upon by our appellate courts. *Twin City Fire Ins. Co. v. Bell*, 232 Kan. 813, 819, 658 P.2d 1038 (1983); *State ex rel. Stephan v. Brotherhood Bank and Trust Co.*, 8 Kan. App. 2d 57, 61, 649 P.2d 419, *rev. denied* 232 Kan. 876 (1982); and *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 351, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981). Nevertheless, defendant contends the State is subject to statutes of limitations even when undertaking governmental functions because the law regarding immunity from limitations was historically inter-twined with the law regarding tort immunity. Thus, defendant contends that when the Supreme Court abolished governmental immunity for negligent acts in *Gorrell v. City of Parsons*, 223 Kan. 645, 576 P.2d 616 (1978), the law regarding immunity from limitations was also altered. Defendant ignores the fact that *McAfee* was decided after *Gorrell* and that the Supreme Court denied the petition for review of *McAfee* even though *Gorrell* had been handed down just months earlier.

Defendant does not contend the fraud cause of action arose out of the State's exercise of a nongovernmental or proprietary func-tion. Indeed, defendant apparently concedes such an argument would be fruitless in light of the holding in the *Celotex Corp.* case. In that case, the court not only found the suit by a school district for fraud and breach of warranty in the installation of a roof on a high school to arise out of a governmental function, the court also rejected the *Gorrell* argument. *Celotex Corp.*, 6 Kan. App. 2d at 351. Thus, defendant's argument and reliance on *Gorrell* is meritless, and the court's refusal to dismiss the fraud claim is correct.

Defendant also raises a number of questions concerning the propriety of the judgment on the warranty and negligence claims. It contends the court erred in permitting plaintiff to go to the jury on both its contract and negligence claims. As authority

for this argument, defendant relies upon implied warranty cases which have held that a plaintiff seeking recovery for a breach of implied warranty may plead and proceed upon the theories of both contract and tort until the facts have been developed but must elect a definite theory before final submission to the trier of the facts. *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 447, 681 P.2d 630 (1984); *Ware v. Christenberry*, 7 Kan. App. 2d 1, Syl. ¶ 7, 637 P.2d 452 (1981). The reasoning behind these cases is that implied warranty is a hybrid cause of action which may sound in either contract or tort. While the defendant commits only one wrong by violating an implied warranty, this wrong may be characterized as either a violation of a legal or contractual duty which gives rise to only one recovery. The plaintiff is required to elect the theory upon which the jury is to consider the implied warranty violation to avoid confusion, particularly in fixing damages.

This case was not presented to the jury as an implied warranty case; rather, plaintiff claimed the defendant committed negligence in designing, manufacturing, and selling the GAF membrane used on the Lodge and also breached a contractual obligation by refusing to honor the terms of its express warranty and guarantee of free repair. In short, plaintiff alleged that defendant committed both a breach of legal duty and a breach of a contractual obligation and sought the appropriate remedy for each of these wrongs. Damages from each wrongful act might have overlapped and plaintiff would not be permitted to obtain duplicative awards. However, the means of preventing a duplicative damage award lies in the drafting of the verdict form or in the power of the court to enter a proper judgment on the verdict. The court did not err in permitting both the contract and the tort claims to go to the jury.

Defendant also contends the verdict form used by the court improperly allowed the jury to apply comparative fault to a contract claim. It contends that even if plaintiff was not required to elect between its claims, the verdict form should have required the jury to separately state the damages for the contract breach from those for the negligence.

When read in conjunction with the instructions, the verdict form was flawed. The trial court gave two instructions concern-

ing the calculation of damages but did not attempt to identify those damages available for a breach of warranty and those which could be awarded for negligence. Since the verdict form permitted the jury only to provide one total damage award without itemization, it could have permitted the jury to award damages for a breach of warranty which were appropriate only for the negligence claim. However, since the jury found defendant committed negligence as well as breach of the express warranty, the failure of the verdict form to separately designate the damages on each claim did not prejudice defendant. Plaintiff would not have been able to recover damages under each claim which were duplicative, and the format of the verdict form prohibited any such duplication. Therefore, under the circumstances of this case, the inadequacies in the verdict form were harmless.

After the presentation of plaintiff's case in chief, defendant moved to dismiss the claim for breach of express warranty on the grounds that plaintiff had failed to prove its satisfaction of a condition precedent to defendant's obligation to perform under the terms of the guarantee. Defendant argued that since plaintiff failed to give written notice of the leaking to its district office within 30 days of the first problems, defendant never had the obligation to repair. The court denied the motion to dismiss and plaintiff defends the ruling, contending (1) defendant waived the issue by not raising it in the pretrial order; (2) the notice to Rinehart Roofing satisfied the requirement of the express warranty; and (3) if the claim was erroneously submitted to the jury, it was harmless error because defendant was found liable on the alternative negligence claim.

Assuming the court erred in denying the motion to dismiss the express warranty claim on the notice question, it does appear the error caused no prejudice to defendant. The jury found defendant was negligent in selling its product for use on the Lodge and assessed damages for that negligence. No separate damages were assessed on the alternative claim for breach of contract and any such damages would, in any event, appear to be duplicative of those already awarded. Therefore, consideration of the merits of this issue is unnecessary.

The portion of the judgment awarding actual damages on the

negligence claim is affirmed. The finding of fraud and the portion of the judgment awarding punitive damages is reversed and the case remanded for a new trial on the fraud claim.