No. 58,501

STATE *ex rel.* ROBERT T. STEPHAN, *Appellee*, v. GAF CORPORATION, *et al., Appellant.*

(747 P.2d 1326)

Opinion filed December 11, 1987.

*Jerry D. Bogle*, of Gott, Young & Bogle, P.A., of Wichita, argued the cause, and Kenneth M. Clark, of the same firm, was with him on the briefs for the appellant.

*William E. Enright*, of Scott, Quinlan & Hecht, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The defendant, GAF Corporation, appeals from a judgment for actual and punitive damages entered against it and in favor of the plaintiff, State of Kansas, after a lengthy jury trial

in Shawnee County District Court. The Court of Appeals affirmed that portion of the judgment awarding actual damages of $70,493.79, but reversed the finding of fraud and the award of punitive damages of $1,000,000. It remanded the case for a new trial on the fraud claim. *State ex rel. Stephan v. GAF Corp.*, 12 Kan. App. 2d 123, 736 P.2d 465 (1987). We granted review upon petitions from both parties.

The factual background of this litigation is clearly set forth in Judge Parks' opinion for the Court of Appeals, 12 Kan. App. 2d at 123-26, which factual statement is incorporated by reference. We will briefly set out the facts here.

The State's suit against GAF was based upon claims of breach of express warranty, negligence, and fraud. Prior to 1974, the State planned a new building at the Kansas Neurological Institute in Topeka. This structure, known as the Flint Hills Lodge, was designed to serve as living quarters for approximately 96 severely handicapped and disabled persons. The cost of the building was in excess of one million dollars. On February 28, 1974, by addendum to the original specifications, GAF specification 212N was adopted as the specification for construction of the roof on the new building. The roof was later built according to that specification.

Manufacturers of roofing and other building and construction components annually submit specifications for their various products to a publisher who incorporates them in a multi-volume work known as "Sweet's Catalog." As one would expect, architects rely upon those specifications. The architects in preparing the specification for the Flint Hills Lodge relied upon roofing specifications submitted and thus published by GAF. The roof was built according to those specifications by a general contractor who was an approved GAF roof installer. After the installation, GAF inspected and approved the roof and issued a written ten-year guarantee. Almost immediately after completion, the roof leaked. Water appeared to come through the roof, through the underlying lightweight insulating concrete, and through the concrete roof deck. Water filled ceiling light fixtures and ceiling tile installations. Water ran down interior walls, dripped from the ceiling, and collected on the floor. After numerous attempts at repair failed, GAF inspected the roof and refused to accept

responsibility for the leaks, claiming that the cracks in the surface (the GAF membrane) were caused by excessive moisture in the underlying Zonolite layer. A new roof was installed by the State at a cost of $109,600 plus architect fees. This litigation followed. The problems with the Flint Hills Lodge roof appear to be similar to those described in *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192 (1983).

The first and primary issue before us is whether the trial court properly instructed the jury as to the elements of fraudulent concealment and, if not, then whether any error in the instructions was prejudicial and constitutes reversible error. The trial court gave the jury two instructions on fraud, and later answered a question from the jury about them. Judge Parks, in his opinion for the Court of Appeals, explains:

"The two instructions given by the trial court on fraud were taken from PIK Civ. 2d 14.40 and 14.42. Instruction No. 4 (14.40) states the elements of active fraud or misrepresentation while Instruction No. 5 (14.42) describes fraudulent concealment as follows:

"Instruction No. 4

'The essential elements required to sustain an action for fraud are:

1. That false (or untrue) representations were made as a statement of existing and material fact.
2. That the representations were known to be false (or untrue) by the party making them, or were recklessly made without knowledge concerning them.
3. That the representations were intentionally made for the purpose of inducing another party to act upon them.
4. That the other party reasonably relied and acted upon the representations made.
5. That the other party sustained damage by relying upon them.

A representation is material when it relates to some matter that is so substantial as to influence the party to whom it was made.'

"and

"Instruction No. 5

'The plaintiff claims fraud through silence on the part of the defendant. To constitute fraud by silence the plaintiff must prove:

1. The defendant has knowledge which plaintiff did not have and which the plaintiff could not have discovered by the exercise of reasonable diligence;
2. The defendant was under an obligation to communicate the true state of facts to the plaintiff;
3. The defendant intentionally failed to communicate to plaintiff the true state of facts;
4. The plaintiff relied upon the defendant to communicate the true state of facts to him; and

5. The plaintiff sustained damages as a result of the defendant's failure to communicate this to the plaintiff.'

"During deliberations, the jury asked the following question: 'In order to find fraud by silence do all five items on page 4 and all items on page 5 need to be present[?]' The court responded in writing, after hearing the objections of defendant, as follows:

'In order to find fraud by silence, all five items in Instruction No. 5 must be proved. Instruction No. 4 is not applicable to fraud by silence.' " 12 Kan. App. 2d at 126-27.

During the jury instruction conference, defense counsel's only objection to Instruction 5 was that it was cumulative to Instruction 4. However, when the trial court received the jury question quoted above, defense counsel objected to the trial court's proposed answer on the grounds that Instruction 5, standing alone, does not require that the silence relate to something material, does not require that the plaintiff reasonably relied and acted upon the representations made, and does not advise the jury how to determine whether the defendant was obligated to communicate the "true state of facts" to the plaintiff.

The Court of Appeals held that in order for silence or fraudulent concealment to constitute fraud, the plaintiff must establish that the seller had superior knowledge of a material defect that was not within the fair and reasonable reach of the buyer, and not discoverable by the buyer through the exercise of reasonable diligence; that the undisclosed knowledge was knowledge of a material fact and defect; and that the buyer reasonably relied upon the seller to communicate the true facts. While we agree with the Court of Appeals' statement of the law, we disagree with its conclusion that Instruction No. 5 was deficient, and that the trial court's response to the jury's question constituted reversible error.

First, let us examine the obligation of GAF to "tell it like it is"—to tell the complete truth in the information it disseminates about its products. There was evidence that GAF experienced problems with this type of roof as early as 1969. These included blistering and splitting when its roofing materials were applied over the lightweight insulating concrete, Zonolite, manufactured by W. R. Grace and Company. The problems did not go away, but got worse at a progressive rate. Meanwhile, GAF continued

to issue and disseminate its recommended building specifications on built-up roofing, urging the installation of its roofing materials over products such as Zonolite. It continued to recommend just the type of installation that was causing the problems. Between May and June, or at least May and the fall of 1973, and long before the specifications for the Flint Hills Lodge were issued, the four GAF employees who were responsible for revising GAF's built-up roofing specifications each year determined that GAF should no longer specify the use of its products over Zonolite. Their conclusions, findings, and recommendations fell on deaf ears; GAF continued to disseminate the same or similar roofing specifications. Architects, contractors, and builders were not warned of the recurring problems with this type of roof, and GAF continued to recommend that such roofs be built, with its products. GAF continued to so recommend, in spite of the fact that it was having increasing problems with similar roofs in areas of the United States where there are severe temperatures causing freezing and thawing during the winter months. This area includes Topeka, Kansas.

Certainly no manufacturer has an absolute right to or can with impunity disseminate false information about its products, knowing that others will rely upon that information to their detriment. Similarly, a manufacturer who knows that its product is being improperly used or installed cannot continue to disseminate with impunity information encouraging the improper installation or use of its material. Such is the case here. GAF continued to recommend the installation of its product in a manner which it knew was improper and unsatisfactory.

The manufacturer of ethical or prescription drugs has a duty to give timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs, of which it knows or has reason to know. The greater the danger, the greater the duty to warn. While the duty is to warn the physician rather than the patient, the manufacturer is held directly liable to the patient. Further, the manufacturer is required to keep abreast of the current state of knowledge as gained through research, adverse reaction reports, and other available methods. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984).

Similarly, a manufacturer of roofing products, such as GAF, deals not with the ultimate consumer, but with those who design and construct buildings for the owner. We think the principles applied in *Wooderson* are applicable here. The person or entity proposing to construct a commercial building may have little, if any, experience in selecting appropriate materials for the structure. A manufacturer such as GAF not only has available to it the benefit of its own research and that of others, but it has the experience gained from having roofs constructed out of its products according to its specifications in many different areas. Where, as here, the manufacturer has actual knowledge of recurring defects and problems when roofs are built according to its specifications, the law imposes upon it the duty to either change those specifications, withdraw those specifications, or warn those likely to follow its recommendations of the dangers inherent in such construction. GAF did nothing. It neither withdrew nor changed its specifications, and it gave no warning to those persons who relied upon its specifications.

Other courts have held that a manufacturer of roofing materials (Celotex) has a duty to give prompt warning when a defect which makes a product hazardous to use becomes known to the manufacturer after the product has been put on the market. "Hazardous to use," in that context, is synonymous with defective for the purpose for which the product is designed and manufactured. *Campus Sweater & Sportswear v. M. B. Kahn Const.*, 515 F. Supp. 64, 101 (D.S.C. 1979); *Carolina Home Builders v. Armstrong Furnace Co.*, 259 S.C. 346, 191 S.E.2d 774 (1972). In *Wolf v. Brungardt*, 215 Kan. 272, 282, 524 P.2d 726 (1974), we said:

"Where one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expedience of the bargain."

Here, GAF had information that its product, when used in conjunction with certain other products precisely as it recommended in its published specifications, was defective for the purpose for which it was designed and manufactured—to pro-

duce a durable, weathertight roof, free of leaks. Under those circumstances, the law imposes on GAF a duty to warn or take other corrective action. The evidence is undisputed that it did not do so. Here, the State did not need to offer evidence beyond that in this record to establish GAF's duty; that duty is imposed by law. Plaintiff established that duty by establishing the background facts. The court did not need to instruct further as to that duty, or to present to the jury as an issue of fact whether the duty arose.

Next, let us consider the matter of materiality. The jury was instructed that it must find the the plaintiff sustained damages as a result of GAF's failure to communicate the true state of facts to the plaintiff. Evidence that GAF failed to communciate some unimportant or immaterial fact which had nothing to do with the damages sustained would not sustain the burden placed on plaintiff by Instruction No. 5. The law does not impose a duty to disclose *immaterial* facts.

In the context in which the instruction was given, the only fact not disclosed by GAF was the known unsatisfactory result with this type of roof. It was not serviceable, it was not weatherproof, it was not durable, and GAF had access to and knew that information. GAF did not disclose it. The information not disclosed had to be the cause of the loss, and thus very much material. The instruction could not have been misinterpreted by the jury nor was it misleading or incomplete. The damages had to result from GAF's failure to communicate, and thus the facts not disclosed *had* to be material.

Finally, let us look at the matter of "reasonable" reliance. The instruction requires the plaintiff to prove that GAF had knowledge which the State did not have, and could not have discovered with reasonable diligence; that GAF had a duty to tell the truth to the State, and intentionally failed to do so; that the State relied upon GAF to tell the truth, and sustained damages as a result of GAF's failure to do so. There was absolutely no issue at the trial but that the State, through its architects and contractors, had every right to rely upon GAF's published specifications. There was no claim that those should *not* have been relied upon. There was no evidence that any of those persons had other information which would make them question the published

specifications. As a matter of law, the State had a right to rely on GAF to tell the truth about its products, and no reason not to so rely. There was no issue of the reasonableness of the State's reliance, and we conclude that the omission of the word "reasonably" before the words "relied upon" in the fourth numbered paragraph of Instruction No. 5 was not a fatal, prejudicial, or reversible error. We hold that Instruction No. 5 was a sufficient statement of the law of fraud by silence, under the facts of this case. The trial court did not err in its response to the jury's question.

GAF next contends that the trial court erred in not requiring the State to elect between its contract and tort theories. In discussing this claim the Court of Appeals said:

"Defendant . . . contends the court erred in permitting plaintiff to go to the jury on both its contract and negligence claims. As authority for this argument, defendant relies upon implied warranty cases which have held that a plaintiff seeking recovery for a breach of implied warranty may plead and proceed upon the theories of both contract and tort until the facts have been developed but must elect a definite theory before final submission to the trier of the facts. *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 447, 681 P.2d 630 (1984); *Ware v. Christenberry*, 7 Kan. App. 2d 1, Syl. ¶ 7, 637 P.2d 452 (1981). The reasoning behind these cases is that implied warranty is a hybrid cause of action which may sound in either contract or tort. While the defendant commits only one wrong by violating an implied warranty, this wrong may be characterized as either a violation of a legal or contractual duty which gives rise to only one recovery. The plaintiff is required to elect the theory upon which the jury is to consider the implied warranty violation to avoid confusion, particularly in fixing damages.

"This case was not presented to the jury as an implied warranty case; rather, plaintiff claimed the defendant committed negligence in designing, manufacturing, and selling the GAF membrane used on the Lodge and also breached a contractual obligation by refusing to honor the terms of its express warranty and guarantee of free repair. In short, plaintiff alleged that defendant committed both a breach of legal duty and a breach of a contractual obligation and sought the appropriate remedy for each of these wrongs. Damages from each wrongful act might have overlapped and plaintiff would not be permitted to obtain duplicative awards. However, the means of preventing a duplicative damage award lies in the drafting of the verdict form or in the power of the court to enter a proper judgment on the verdict. The court did not err in permitting both the contract and the tort claims to go to the jury." 12 Kan. App. 2d at 130-31.

We agree. An election is required only when the claims are inconsistent. Claims are inconsistent where one " 'must allege what the other denies, or the allegation in one must necessarily

repudiate or be repugnant to the other.' " *Drewicki v. Fidelity & Guaranty Fire Corp.*, 157 Kan. 569, 573, 142 P.2d 806 (1943) (quoting *Taylor v. Robertson Petroleum Co.*, 156 Kan. 822, Syl. ¶ 5, 137 P.2d 150 [1943]). The jury in this case found that GAF breached the terms of its express warranty to the State. It also found that GAF was guilty of negligence. Only one recovery of actual damages was sought or permitted. The trial court did not err in failing to require an election.

GAF next contends that the trial court erred in the verdict form submitted since it did not adequately set forth the appropriate basis for recovery upon the alternative theories of negligence and contract. We agree with the Court of Appeals that, under the circumstances of this case, the inadequacies of the verdict form were harmless. The case was presented on the theories of breach of express contract, negligence, and fraud. The jury specifically found that GAF breached its written guaranty contract, that it was negligent, and that it was guilty of fraud. The verdict form permitted only one recovery, and there is no contention by the appellant that the various amounts of actual damages sought were not properly recoverable on the theory of negligence. GAF argues that consequential damages were not recoverable for a breach of its express written warranty, and that the jury should have been specifically instructed and required to find the damages recoverable for breach of express warranty. If the jury had found breach of warranty but no negligence, appellant's complaint would have merit. However, considering all of the findings of the jury, we find no error.

GAF also contends that under the terms of its express warranty, the inspection and service guaranty, the owner was obligated to report any leaks to GAF's nearest district office no later than 30 days after the discovery thereof and that, since no such prompt report was made, the State is barred from any recovery for breach of express warranty. The Court of Appeals discussed this issue and disposed of it as follows:

"After the presentation of plaintiff's case in chief, defendant moved to dismiss the claim for breach of express warranty on the grounds that plaintiff had failed to prove its satisfaction of a condition precedent to defendant's obligation to perform under the terms of the guarantee. Defendant argued that since plaintiff failed to give written notice of the leaking to its district office within 30 days of

the first problems, defendant never had the obligation to repair. The court denied the motion to dismiss and plaintiff defends the ruling, contending (1) defendant waived the issue by not raising it in the pretrial order; (2) the notice to Rinehart Roofing satisfied the requirement of the express warranty; and (3) if the claim was erroneously submitted to the jury, it was harmless error because defendant was found liable on the alternative negligence claim.

"Assuming the court erred in denying the motion to dismiss the express warranty claim on the notice question, it does appear the error caused no prejudice to defendant. The jury found defendant was negligent in selling its product for use on the Lodge and assessed damages for that negligence. No separate damages were assessed on the alternative claim for breach of contract and any such damages would, in any event, appear to be duplicative of those already awarded. Therefore, consideration of the merits of this issue is unnecessary." 12 Kan. App. 2d at 132.

We agree. Also, we note that Rinehart Roofing, the subcontractor who did the actual roof installation, was required under a side agreement with GAF to make all necessary repairs within the first two years of completion of construction. The State referred all complaints during that time to Rinehart, and Rinehart made all repairs that were made on the roof during that period of time. Leaks continued. The State notified GAF, and, without raising the matter of lack of prompt notice, GAF inspected the roof and declined to make any repairs or assume any responsibility, giving other reasons for its action. GAF did not raise the matter of lack of notice, a condition precedent, in its answer filed in this case. It did not raise the matter at the pretrial conference, and that defense is not included in the pretrial order. GAF's failure to raise at pretrial the defense of breach of a condition precedent prevents consideration of the notice issue. It is well established that a pretrial order controls the subsequent course of the action unless modified to prevent manifest injustice. The issues stated therein are the issues upon which the case is to be tried.

In *Dold v. Sherow*, 220 Kan. 350, 552 P.2d 945 (1976), we held that the matter of notice of breach of statutory warranty was waived where there was no mention of that as an issue in the pretrial order. Further, no prejudice resulted to GAF here, since damages were not assessed separately based upon breach of express contract of warranty or for negligence. In short, had there been no breach of express warranty, the total damage award would have been the same; it could not have been more.

We turn now to GAF's claim that the State's fraud claim is barred by the statute of limitations, K.S.A. 60-513, which provides in substance that an action for relief on the grounds of fraud must be brought within two years of the discovery of the fraud. The Court of Appeals said:

"The trial court denied the motion to dismiss the fraud claim, concluding that the statute of limitations did not apply to the State. K.S.A. 60-521 describes the circumstances under which statutes of limitations apply to the State as follows:

" 'As to any cause of action accruing to the state, any political subdivision, or any other public body, which cause of action arises out of any proprietary function or activity, the limitations prescribed in this article shall apply to actions brought in the name or for the benefit of such public body in the same manner as to actions by private parties, except in (1) actions for the recovery of real property or any interest therein, or (2) actions to recover from any former officer or employee for his or her own wrongdoing or default in the performance of his or her duties.'

"This court in *State ex rel. Schneider v. McAfee*, 2 Kan. App. 2d 274, 275, 578 P.2d 281, *rev. denied* 225 Kan. 845 (1978), held that since causes of action arising out of governmental functions are omitted from K.S.A. 60-521, statutes of limitation do not apply to such actions. This holding and the rule that statutes of limitations do not run against the State unless specifically provided by statute have been repeatedly relied upon by our appellate courts. *Twin City Fire Ins. Co. v. Bell*, 232 Kan. 813, 819, 658 P.2d 1038 (1983); *State ex rel. Stephan v. Brotherhood Bank and Trust Co.*, 8 Kan. App. 2d 57, 61, 649 P.2d 419, *rev. denied* 232 Kan. 876 (1982); and *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 351, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981). Nevertheless, defendant contends the State is subject to statutes of limitations even when undertaking governmental functions because the law regarding immunity from limitations was historically intertwined with the law regarding tort immunity. Thus, defendant contends that when the Supreme Court abolished governmental immunity for negligent acts in *Gorrell v. City of Parsons*, 223 Kan. 645, 576 P.2d 616 (1978), the law regarding immunity from limitations was also altered. Defendant ignores the fact that *McAfee* was decided after *Gorrell* and that the Supreme Court denied the petition for review of *McAfee* even though *Gorrell* had been handed down just months earlier.

"Defendant does not contend the fraud cause of action arose out of the State's exercise of a nongovernmental or proprietary function. Indeed, defendant apparently concedes such an argument would be fruitless in light of the holding in the *Celotex Corp.* case. In that case, the court not only found the suit by a school district for fraud and breach of warranty in the installation of a roof on a high school to arise out of a governmental function, the court also rejected the *Gorrell* argument. *Celotex Corp.*, 6 Kan. App. 2d at 351. Thus, defendant's argument and reliance on *Gorrell* is meritless, and the court's refusal to dismiss the fraud claim is correct." 12 Kan. App. 2d at 129-30.

We agree with the Court of Appeals' rationale. Statutes of

limitation are measures of public policy and are entirely subject to the will of the legislature. *State v. Bentley,* 239 Kan. 334, 339, 721 P.2d 227 (1986). We do not find the *Gorrell v. City of Parsons,* 223 Kan. 645, 576 P.2d 616 (1978), rationale persuasive. *Gorrell* dealt with the tort immunity of Kansas municipalities, and in effect permitted the bringing of such actions against municipalities. The reasons supporting tort immunity are not the same as those which support an extension of time limitations to the State beyond those limits governing individuals. The action was not untimely and it is not barred by the two-year statute of limitations. We have not overlooked the arguments of appellant, and the cases cited, but we find them unpersuasive.

Finally, we turn to GAF's contention that the punitive damage award of one million dollars is excessive and should shock the conscience of this court. The actual damages sustained by the State were determined to be slightly in excess of $100,000. That was reduced by the trial court when judgment was entered, due to the 70% negligence attributed to GAF by the jury. The million dollar punitive damage award is not quite ten times the amount of the actual damages sustained by the plaintiff. We recognize that in other cases cited and relied upon by the parties, we have approved punitive damage awards, some considerably greater than ten times the actual damages, others being considerably less. We have carefully considered the evidence in this case, and we find nothing to arouse our sympathy for GAF or to shock our conscience. GAF intentionally, knowingly and wilfully led people—the State in this case—into building expensive roofs which were not durable, not watertight, and not satisfactory, and which not only had to be replaced within a short period of time, but which caused much hardship upon the building's owner and occupants during the interim. All of this could have and should have been avoided, had GAF withdrawn its specifications some years earlier when it first had knowledge of the unsatisfactory result reached when its roofing membrane was installed over Zonolite. We do not find the award excessive.

The judgment of the Court of Appeals is affirmed in part and reversed in part; the judgment of the district court is affirmed.