**PETROLEUM PRODUCTS, INC.,**
**formerly doing business as Burke**
**Energy Corporation, Plaintiff,**

v.

**MID–AMERICA PIPELINE COMPANY**
**a Delaware Corporation, Defendant.**

Civ. A. No. 90–1452–FGT.

United States District Court,
D. Kansas.

Feb. 24, 1993.

Thomas A. Dower, Reynolds, Peirce, Forker, Suter & Rose, Hutchinson, KS, for Petroleum Products, Inc.

John P. Woolf, Triplett, Woolf & Garretson, Wichita, KS, Royse M. Parr, Mid–America Pipeline Co., Tulsa, OK, W. Michael Shinkle, Davenport, IA, Calvin L. Wiebe, Wichita, KS, for Mid–America Pipeline Co., Inc.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on defendant's motion for summary judgment. (Doc. 41). Defendant argues in support of its motion that plaintiff cannot prove a cause of action for conversion and that the claim would be barred by the applicable statute of limitations.

The plaintiff, Petroleum Products, Inc., while doing business under the name of Burke Energy Corporation ("Burke"), entered into a contract with Pester Refining Company, Inc. ("Pester") for Burke to sell to Pester certain quantities of natural gas liquids ("NGLs"). Defendant, Mid–America Pipeline Company ("Mid–America"), is an interstate common carrier of NGLs. In January and February 1985 Mid–America received the NGLs from Burke for the purpose of transporting them in its pipeline system to Pester.

On or about February 25, 1985, Pester filed for bankruptcy protection in Iowa. Pester had not paid for the NGLs it had agreed to purchase from Burke. On March 3, 1985, Burke notified Mid–America that it wished to exercise its right under the Uniform Commercial Code ("UCC") to stop transfer and delivery of its NGLs. Pester demanded that the NGLs be delivered to it. Some of the NGLs had already been delivered to Pester, but Mid–America agreed to return the portion of Burke's NGLs still in Mid–America's possession. However, Mid–America would return the NGLs only upon receipt from Burke of an indemnity and hold harmless agreement and an irrevocable letter of credit to ensure payment of any damages and expenses resulting from the stoppage of delivery. Burke agreed to indemnify Mid–America and hold it harmless for any liability, but did not agree to provide a letter of credit.

On March 8, 1985, Mid–America sent a letter to Burke stating that without the financial security requested, it would be unable to return the NGLs pending a final court judgment on the issue of who as entitled to possession of the NGLs. The dispute had been raised in the bankruptcy action and resulted in lengthy litigation in the Bankruptcy Court, with certain issues appealed to the Eighth Circuit Court of Appeals. *In re Pester Refining Co.*, 845 F.2d 1476 (8th Cir. 1988). On August 12, 1988, the Bankruptcy Court ordered Mid–America to immediately return to Burke its NGLs. Mid–America returned the products to Burke on September 8, 1988.

Plaintiff filed the instant action on September 7, 1990, alleging that defendant's failure to redeliver the NGLs upon plaintiff's request constitutes conversion. Defendant counterclaimed for the costs of redelivery and litigation. Defendant moves for summary judgment on plaintiff's claim against it. Defendant argues that it was acting within its rights in holding the NGLs and that, therefore, its actions did not constitute conversion. Furthermore, defendant argues that the plaintiff's claim is barred by the applicable statute of limitations.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary

evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The parties agree on all the facts for purposes of this motion. The parties also agree that Kansas law governs this case.

I. The Parties' Rights Under the Uniform Commercial Code

█ In this case plaintiff sought to exercise its right under the UCC to stop delivery upon learning that Pester had filed for bankruptcy protection. K.S.A. § 84–2–705. The relevant portions of K.S.A. § 84–2–705 state as follows:

(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent....

(3)(a) To stop delivery the seller must so notify as to enable the bailee by reasonable diligence to prevent delivery of the goods.

(b) After such notification the bailee must hold and deliver the goods according to the directions of the seller but the seller is liable to the bailee for any ensuing charges or damages.

Defendant believed delivering the goods according to plaintiff's directions could result in liability to Pester. Accordingly, defendant refused to redeliver the goods until it re-

ceived from plaintiff what defendant considered adequate assurances and financial security or until the bankruptcy court resolved the matter.

The issue is whether defendant had the right to hold the NGLs until it received an irrevocable letter of credit from plaintiff or until the bankruptcy court reached a final decision. The court believes that defendant had no right to demand assurances or security. K.S.A. § 84–2–705(3)(b) provides that the bailee must deliver the goods according to the seller's directions and that the seller is liable to the bailee for any damages. There is neither any need nor any authority under that section for assurances from the seller that it will indemnify the bailee for damages. The seller automatically undertakes the duty to indemnify when it stops delivery.

Defendant claims that it had the right to demand financial security in this case because Pester was asserting that it had a right to have the NGLs delivered according to the contract. K.S.A. § 84–7–603 gives the bailee options when faced with conflicting claims to the merchandise.[1] Nowhere does the UCC provide for the option that defendant seeks in this case.

The UCC provides sufficient protection for a bailee in a situation like the one involved in this case. Mid-America had no right to go beyond its UCC options and demand an irrevocable letter of credit before performing its duty under K.S.A. § 84–2–705(3)(b).

█ However, defendant had the right to hold the NGLs pending the outcome of the adversarial proceedings before the bankruptcy court. Under K.S.A. § 84–7–603, if more than one party claims entitlement to goods, the bailee in possession is permitted to hold the goods and bring an interpleader action to determine the validity of the competing claims. The defendant did not bring an interpleader action in this case, but the bankruptcy court had before it the issue of who was entitled to possession of the NGLs.

---

1. K.S.A. § 84–7–603 states as follows:
   **Conflicting claims; interpleader.** If more than one person claims title or possession of the goods, the bailee is excused from delivery until he has had a reasonable time to ascertain the validity of the adverse claims or to bring an

action to compel all claimants to interplead and may compel such interpleader, either in defending an action for nondelivery of the goods, or by original action, whichever is appropriate.

Bringing an interpleader action, therefore, would have served no useful purpose. Because such an action would have involved the same parties and the same issues already before the bankruptcy court, the defendant was not obligated to bring an interpleader action. *Northwestern Nat'l Sales, Inc. v. Commercial Cold Storage, Inc.*, 162 Ga.App. 741, 293 S.E.2d 30 (Ga.App.1982). Therefore, defendant had the right to hold the goods until August 12, 1988, when the bankruptcy court ordered defendant to immediately return the NGLs to plaintiff.

## II. Statute of Limitations

■ The parties agree that the statute of limitations applicable to this action is two years. K.S.A. § 60–513(a)(2). Plaintiff filed its Complaint on September 7, 1990. The only question, then is whether plaintiff's cause of action accrued before September 7, 1988. Plaintiff contends that the cause of action accrued on September 8, 1988, when defendant redelivered the NGLs to plaintiff. Defendant offers several alternatives for when plaintiff's cause of action might have accrued, the latest of which is August 12, 1988, the date of the bankruptcy court's final order.

■ Conversion is an unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. *Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, 500, 701 P.2d 934 (1985). A cause of action in conversion arises "when substantial injury first appears or when it becomes reasonably ascertainable." *Clark Jewelers v. Satterthwaite*, 8 Kan.App.2d 569, syl. ¶ 6, 662 P.2d 1301 (1983).

■ According to plaintiff, it did not know until the NGLs were returned whether it had sustained any damages. Because the price of NGLs fluctuates, the possibility existed that the NGLs would be worth more when returned than when converted, thus leaving plaintiff undamaged. Plaintiff's argument reveals a misunderstanding of the tort of conversion. An action in conversion protects the right of possession as well as the right of disposal or the right to make a profit on resale. If the defendant violated plaintiff's right to possess, it was at the time defendant's possession became unlawful, not when it relinquished its unlawful possession. Plaintiff knew that defendant had possession of the NGLs and asserted long before September 8, 1988, that defendant's possession was unlawful.

■ Moreover, a cause of action generally accrues as soon as the plaintiff could have first filed and prosecuted the action to a successful completion. *Clark Jewelers*, 8 Kan.App.2d at 569, syl. ¶ 5. Certainly the rightful owner of goods can bring an action in conversion without first waiting for the tortfeasor to return the goods. Otherwise the tortfeasor could remain immune from suit by continuing to hold the converted goods.

In support of its position, plaintiff cites *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 716 P.2d 575 (1986), in which the Kansas Supreme Court held that a cause of action for legal malpractice accrues when the journal entry from the underlying action is filed. If *Pancake House* is analogous at all, it only shows that plaintiff's conversion claim is barred because it was not brought within two years of the bankruptcy court's final order.

If the defendant committed conversion at all, it did so no later than August 12, 1988. The plaintiff brought this action more than two years later. Therefore, action is barred by the applicable statute of limitations. Because there is no factual dispute and the law clearly supports defendant's position, defendant is entitled to summary judgment.

IT IS BY THIS COURT THEREFORE ORDERED that defendant's motion for summary judgment (Doc. 41) is hereby granted.