No. 56,967

Joe Carmichael, Jo Saille Carmichael, Harold Harris, Eugene Kaufman, M.D., Donald E. Lambdin, Walter L. Reazin, M.D., Don Matlack, Robert W. Reiger, and Lyle Wheatcroft, *Appellees*, v. Halstead Nursing Center, Ltd. and James F. Holleman, Jr., *Appellants*, and John White, *Defendant*.

(701 P.2d 934)

Opinion filed June 21, 1985.

*Stephen G. Scholl*, of Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C., of Kansas City, Missouri, argued the cause, and *Craig D. Cox*, of Halstead, was with him on the brief for appellants.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Amy S. Lemley*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

Herd, J.: This is an action by former shareholders of a dissolved Kansas corporation to recover actual and punitive damages for breach of contract, unjust enrichment and conversion. This appeal is from a jury verdict against defendants Halstead Nursing Center, Ltd. and James F. Holleman, Jr., in the amount of $30,123.49 together with prejudgment interest in the amount of $9,834.00, and for $10,000 punitive damages against defendant Halstead Nursing Center, Ltd. and $40,000 punitive damages against Holleman.

This case presents a name recognition problem. Halstead Nursing Center, Inc. was formed in 1968 and built, owned and operated Halstead Nursing Center in Halstead, Kansas. In November 1976 it was sold to appellant, Halstead Nursing

Center, Ltd. Appellees are the former shareholders and officers and directors of Halstead, Inc.

In 1974, Halstead, Inc. became a class member in a class action suit by nursing home owners in a lawsuit against the State of Kansas. The lawsuit was filed in federal court and captioned *Seneca Nursing Home, et al. v. The Kansas State Board of Social Welfare, et al.*, Case No. T-4779. The object of the *Seneca* suit was to collect money owed to the nursing homes by the Kansas Department of Social and Rehabilitation Services. Prior to the lawsuit, the SRS had administratively ruled it was going to pay only a portion of the ordinary, necessary patient care expenses for SRS patients due to restricted funding by the legislature. Halstead, Inc., as a class member in the *Seneca* suit, was seeking reimbursement for its care of SRS patients dating back to 1968.

When appellees decided to sell Halstead, Inc. in 1974, they contacted Mr. Bill Blass to act as a broker for the sale. Blass is a realtor, a partner in a mortgage company, and an expert on nursing homes.

A contract for sale of Halstead Nursing Center was entered into on April 15, 1976, with James F. Holleman, Jr.

The contract consisted of one long page with a shorter page attached to it. The long page was a form real estate contract. The shorter page was an original entitled "Addendum to Contract for Sale of Real Estate April 15, 1976." The addendum was attached with scotch tape to the front of the longer form document. The contract and addendum were prepared by realtor Blass. Blass testified the addendum was attached to all copies of the contract before the documents left his office and before they were taken to Holleman or to appellees to be signed.

Appellant Holleman testified at trial the addendum was not attached to or a part of the form contract of sale either when he signed it in the first instance or when he initialed the changes subsequently made to the contract by the appellees. All other evidence, however, indicated the addendum was attached prior to appellant's signing. In addition to the testimony of various witnesses, the jury had before it actual, physical evidence the addendum was a part of the contract when appellant Holleman initialed the changes made to the contract. As appellant Holleman initialed one of the changes made to the longer, form page of the contract, his pen struck and marked the underside of the attached addendum along the fold where it was attached to the

longer page. Holleman also testified that although he was an experienced business person he did not make or get a copy of the contract for his files.

The addendum contained a significant provision. It provided:

"Buyer waives any and all rights to proceeds of a certain class action suit filed against the State of Kansas and to the bond reserve account held by Union National Bank, Wichita, Kansas."

On November 25, 1976, Halstead, Inc. held a special meeting of its board of directors and stockholders. It authorized appellees Matlack and Lambdin to complete the sale of the nursing home to Holleman. It also authorized liquidation and dissolution of Halstead Nursing Homes, Inc. The dissolution plan provided in part that Halstead, Inc. liquidate and distribute all of its assets to its shareholders. On July 1, 1977, Halstead, Inc. voluntarily dissolved.

After the November 30, 1976 closing, Holleman began operating the nursing center as Halstead Nursing Center, Ltd. In October of 1978, appellee Matlack and two other individuals examined the patient care records of Halstead, Inc. in the possession of Halstead, Ltd. in preparation for submitting its itemized, liquidated claim in the *Seneca* case. The administrator of the center for Halstead, Ltd. did not object to Matlack's viewing of the records.

Several years later, the *Seneca* suit was settled. It was determined that the State of Kansas would reimburse the nursing homes for prior underpayments in settlement of the class action. On June 13, 1980, counsel for the nursing homes in the *Seneca* suit mailed an affidavit intended for appellees to the "Halstead Nursing Center" in Halstead. The filing of the affidavit was a prerequisite to receiving payment of the judgment. Halstead, Ltd. forwarded the affidavit to appellee Matlack in Wichita. Matlack executed the affidavit form and returned it to counsel for the class members.

On June 29, 1980, the court ordered the distribution of funds in the *Seneca* suit to the class action plaintiffs, one of which was Halstead, Inc. A check from the court in the amount of $30,123.49 payable to "Halstead Nursing Center" was mailed to and received by Halstead, Ltd., as the affidavit forwarded to Matlack had been. The check, however, was not forwarded to

Matlack in Wichita. At appellant Holleman's direction, the check was deposited in the operating account of Halstead, Ltd.

Appellees then brought this action for damages for breach of contract, unjust enrichment and conversion. The jury found for the plaintiffs. Holleman and Halstead Nursing Center, Ltd. appeal.

Appellants initially argue the court erred in denying their motion for a directed verdict, in submitting the case to the jury and in refusing to set aside the jury verdict since appellees are shareholders of a dissolved Kansas corporation.

Appellees are the former shareholders and officers and directors of Halstead Nursing Center, Inc., which was dissolved on July 1, 1977. This suit was filed against Holleman and Halstead Nursing Center, Ltd. on December 16, 1980, more than three years after the corporation was dissolved. Appellants argue this is a violation of K.S.A. 17-6807, which provides:

"All corporations, whether they expire by their own limitation or are otherwise dissolved . . . shall be continued, nevertheless, for the term of three (3) years from such expiration or dissolution or for such longer period as the district court in its discretion shall direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within three (3) years after the date of its expiration or dissolution, and for the purpose of such actions, suits or proceedings, the corporation shall be continued a body corporate beyond the three-year period and until any judgments, orders, or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the district court."

Appellants note the three-year period may be extended by the court but application for such extension must be made prior to the expiration of the three years. *Patterson v. Missouri Valley Steel, Inc.,* 229 Kan. 481, 625 P.2d 483 (1981). No application for extension was made by the appellees in this case.

Appellants also cite several cases outside of Kansas in which the courts held the statute prescribing the time for lawsuits of dissolved corporations is binding and shareholders may not sue "irrespective of the identity or status of the party seeking such enforcement." *Gordon v. Loew's Incorporated,* 147 F. Supp. 398, 408 (D.N.J. 1956). See also *Canadian Ace Brewing v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183 (7th Cir. 1980);

*Poliquin v. Sapp,* 72 Ill. App. 3d 477, 390 N.E.2d 974 (1979); and *Koepke v. First Nat. Bank of DeKalb,* 5 Ill. App. 3d 799, 284 N.E.2d 671 (1972).

Appellees argue if K.S.A. 17-6807 is applicable they are still within the time limit of this statute since the statute says parties may pursue the suit filed prior to dissolution until judgment is "fully executed." Appellees argue this lawsuit was necessary in order to have the judgment, in the suit filed by the corporation prior to its dissolution, fully executed.

Appellees cite a case, also outside of Kansas, which is on point with the instant case. *Levy v. Liebling,* 238 F.2d 505 (7th Cir. 1956), *cert. denied* 353 U.S. 936 (1957). In that case the former stockholders of a dissolved Kentucky corporation sued a judgment debtor of the dissolved corporation on the judgment. The corporation had instituted the legal proceedings before commencing dissolution proceedings, and under Kentucky law, the individual stockholders had standing to pursue an action against the judgment debtor even though the statutory winding down period for the corporation had expired. The court reasoned that the property of the dissolved corporation passed by operation of law to its stockholders, and that as a result, the stockholders could sue in their individual capacity for the judgment. The *Levy* court noted: "[T]his action was not brought by plaintiffs in their capacity as former stockholders . . . . The suit was brought in their individual capacity, and their status as former stockholders is immaterial other than to show the manner by which they acquired a right sufficient to authorize the maintenance of a suit." 238 F.2d at 508. *Levy* is authority for the rule that stockholders who have an individual personal interest in the judgment of a suit brought by the corporation may pursue that judgment in a separate lawsuit after the corporate winding down period has expired.

Additionally, appellees argue the stockholders here had the right to pursue claims individually because during the corporate liquidation it was resolved by the directors and stockholders that the stockholders would receive the proceeds from the class action claim against the State in the *Seneca* suit. Thus, they argue they have an assigned right to the settlement check, as well as a legal and equitable right to it.

We hold appellees had the right to pursue this action under the

continuing provision of K.S.A. 17-6807, since the stockholders were assigned the judgment owned by the dissolved corporation and thus had the right to pursue its collection beyond the three-year limitation period.

Appellants next argue that, since appellees are not named payees on the negotiable instrument which is the subject of this suit, there was no conversion.

Conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. *Temmen v. Kent-Brown Chev. Co.*, 227 Kan. 45, Syl. ¶ 2, 605 P.2d 95 (1980). Appellants argue the settlement check did not "belong to another" since it was made out only to "Halstead Nursing Center" rather than Halstead Nursing Center, Inc., or the individual stockholders. The only way, therefore, to prove the check belonged to Halstead, Inc., was to see what was the intent of the maker.

The intent of the maker, appellants argue, was evidenced by the *Seneca* court's document which shows the claim was payable to "Halstead Nursing Center, C/O John White, 10th and Walnut, Halstead, KS." John White is the administrator for Halstead Nursing Center, Ltd. Additionally, the claim was classified by the *Seneca* court as a claim payable "as listed." As just noted, the claim was listed as payable to John White. Appellants note there was another category in the class action under which Halstead, Inc. could have reserved its right to the check. That category was "original claimants who have sold their facilities which provided services on which the claims were grounded and have according to their affidavits retained the ownership of the claim." Hence, appellants argue, by virtue of the failure of Halstead, Inc. to insure its claim was properly classified in the class action *Seneca* suit, Halstead, Inc. had no claim to the check. Appellees admit the category under which they were classified by the *Seneca* court was incorrect. They argue, however, they had a right to possession as evidenced by the contract entered into with Holleman and Halstead, Ltd., which stated specifically that the stockholders of Halstead, Inc. retained the right to the settlement fund. Therefore, the payee, appellees argue, was irrelevant since all evidence indicated the check was the property only of Halstead, Inc. and its previous stockholders. There was *no* evidence Halstead, Ltd. or Holleman had any possessory right to the

check. The evidence is conclusive that the check in settlement of the *Seneca* suit was the property of appellees. This issue is without merit.

Appellants' final argument is that their refusal to turn the proceeds of the check over to appellees did not constitute conversion.

Appellants initially argue conversion of the money in question is not properly within the definition of conversion. We have held:

" 'An action will not lie for conversion of a mere debt or chose in action. Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.' 18 Am. Jur. 2d, Conversion § 10." *Temmen v. Kent Brown Chev. Co.*, 227 Kan. at 50.

In *Temmen*, Kent-Brown Chevrolet deducted from the wages of its employee the cost of repairing the employee's car. In that case we held there was a mere dispute over wages, not over specific property, hence there could be no conversion. Appellees argue this is authority for the fact that the dispute in this case is only over an amount of money, not a specific item, hence the action for conversion is inappropriate.

Appellees respond initially that this is a different argument made by appellants on appeal than that taken at trial. At trial appellants argued a negotiable instrument could not be the subject of conversion. This was clearly wrong since it is generally accepted that "an action may be maintained for the conversion of commercial paper, such as promissory notes, bills of exchange, checks, and other certificates of indebtedness." 18 Am. Jur. 2d, Conversion § 18, pp. 167-68.

Appellees also argue they had an indisputable right to possession of the negotiable instrument issued in the *Seneca* case and appellants exercised wrongful dominion over that negotiable instrument when Holleman ordered it to be deposited in the bank account of Halstead, Ltd.

Additionally, appellees cite *Aetna Casualty and Surety Co. v. Hepler State Bank*, 6 Kan. App. 2d 543, 630 P.2d 721 (1981), wherein it was held that an unauthorized endorsement of a check constituted conversion, just as does a forged endorsement. Appellees also cite *Trail Clinic v. Bloch*, 114 Mich. App. 700,

319 N.W.2d 638 (1982), which supports a cause of action in conversion under circumstances similar to this case.

We hold in this case the check was property belonging to appellees over which the unauthorized assumption and exercise of the right of ownership by appellants resulted in conversion.

The judgment is affirmed.