In re MASTER MORTGAGE
INVESTMENT FUND,
INC., Debtor.

MASTER MORTGAGE INVESTMENT
FUND, INC., Plaintiff,

v.

AMERICAN NATIONAL FIRE
INSURANCE COMPANY,
Defendant.

Bankruptcy No. 92–41386–2–11.
Adv. No. 92–4286–2–11.

United States Bankruptcy Court,
W.D. Missouri.

Oct. 21, 1993.

Christine Schlomann, John W. McClelland, Wirken & King, Kansas City, MO, John P. Kreis, Stroock & Stroock & Lavan, Los Angeles, CA, for plaintiff, debtor.

Richard E. McLeod, Grace L. Spezia, Kansas City, MO, R. Brent Cooper, Cowles & Thompson, Dallas, TX, for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case comes before the Court on Defendant American National Fire Insurance Company's (American National) Motion for Judgment on Partial Findings of Fact on Counts II, III, IV, V, VI, VII, and VIII. The Court previously issued opinions on two Defendant motions for partial summary judgment on Counts II through IX which the Court filed on March 9, 1993, and on Count I which the Court filed on April 5, 1993.

### PROCEDURAL HISTORY

This case was originally filed by the plaintiff, Master Mortgage Investment Fund, Inc. (Master Mortgage) on October 3, 1990, in the District Court of Dallas County, Texas. Master Mortgage filed a voluntary Chapter 11 petition under Title 11 of the United States Code on April 17, 1992. On August 31, 1992, Master Mortgage voluntarily dismissed the Texas action and, on the same day filed the instant adversarial action in the bankruptcy court, alleging substantially the same causes of action.

The Court has entered two previous rulings in this case. In a Memorandum Opinion dated March 9, 1993, the Court held that through Missouri's statute of limitations borrowing provision, the Kansas statute of limitations applies to the case. *See* V.A.M.S. § 516.190 (1986). Kansas provides a two year limit on tort actions and a three year limit on contract actions. K.S.A. §§ 60–512 and 60–513 (Supp.1991). The statute contains a six-month saving statute. K.S.A. § 60–518. The state court action was timely filed, and the present action was filed within six-months of its dismissal. Therefore, the Court concluded that Master Mortgage's tort claims, Counts II through VIII, were not time-barred due to the savings clause.

The Court also held that Kansas substantive law applies to the case. Master Mortgage based Count IX on a Texas insurance statute. Kansas has no comparable provision. Therefore, the Court dismissed Count IX.

This Court in its Memorandum Opinion dated April 5, 1993 found that Master Mort-

gage had knowledge of the facts giving rise to this cause of action by, at least as early as, March 22, 1990. It did not file the present adversarial action in bankruptcy until August 31, 1992. The Court held that Master Mortgage was a third party beneficiary to the contract of insurance bound by the terms of the contract and subject to any defenses that American National could have asserted against the insured, Hotel Management Corp. (HMC). The insurance contract included a two year limitation of action provision. By contracting for a limitation of action provision, the parties waived their rights to rely on the statutory limitations including the Kansas saving statute. Although the initial filing of the action was within two years of the time that the cause of action accrued, the adversarial filing in bankruptcy was beyond the two year period. Therefore, the Court concluded that Count I of Master Mortgage's complaint for breach of contract was time barred. The dismissal of the state court action proved fatal to the contract claim.

The parties proceeded to trial on Counts II through VIII. The Court held a four day bench trial on August 24 through 27, 1993. At the close of the Master Mortgage's case, American National moved for judgment as a matter of law. It filed a Motion for Judgment on Partial Findings of Fact on August 26, 1993. American National argued that four of the seven remaining claims, Counts II for negligent breach of contract, III for negligent concealment, IV for fraud by concealment, and VIII breach of the duty of good faith and fair dealing are time barred. Although the claims are couched in the language of tort, the claims are essentially contract claims and should be dismissed under the two year contractual limitation of action provision. American Nation also argued that the remaining three counts, Count V for intentional interference with business relationship, Count VI for conversion, and VII for breach of fiduciary duty are not supportable under Kansas law given the present facts. Both parties filed briefs, and the issue is ripe for decision.

## FACTS

Master Mortgage made a loan to HMC for the acquisition and renovation of a hotel located at 2201 West Airport Freeway, in Euless County, Texas (the "hotel"). The loan was secured by a mortgage on the hotel. American National issued an insurance policy insuring the hotel against various hazards including losses from windstorms and hail. The policy was in effect from September 1988 until it was canceled for the non-payment of premiums in July of 1989. Master Mortgage was the designated loss payee on the policy. Master Mortgage's status as mortgagee of the hotel was known to American National.

The hotel consists of a six-story tower section, two two-story wings north and south of the tower, and a restaurant/bar just north of the north wing. Master Mortgage financed the restoration of the property including the construction of the restaurant/bar. HMC hired Gaylen Concepts, Inc. to act as the general contractor on the project. At some point in the renovations, the sub-contractors were no longer receiving payment for their services. HMC continued to operate the hotel throughout the renovations.

In May of 1989, a windstorm severely damaged the tower section roof. A temporary roof was put over the tower section, and HMC filed a claim with American National. American National settled the claim in June, 1989 for $45,000. American National issued a check to HMC listing only HMC as the payee. The failure to list Master Mortgage as a payee violated the loss payee provision of the insurance policy. Master Mortgage was not notified of the initial loss or settlement of the claim, also in contravention of the policy terms.

The roof was inadequately repaired at a cut rate price. The roof subsequently leaked causing severe damage to the interior of the hotel. Certainly the extent of the damage was not discovered by Master Mortgage until at least February, 1990, even if the existence was known earlier.

Also in June, 1989, someone vandalized the hotel on four separate occasions flooding portions of the tower section by turning on the

fire hoses. In late August or early September, American National contacted Master Mortgage through its attorney regarding the vandalism. The roof loss claim and settlement were also discussed at that time. The Court previously held in its Memorandum Opinion of April 5, 1993 that Master Mortgage had knowledge of the facts giving rise to its causes of action at least as early as March 22, 1990. While the Court believes Master Mortgage had knowledge of the existence of this cause of action earlier than March, 1990, whether the Court uses the March, 1990 date or the earlier August or September, 1989 date does not affect the outcome of this case. Using either date, Master Mortgage's filing in the state court was timely for both contract and tort claims. With the Kansas saving statute, tort claims are still timely in this bankruptcy adversary proceeding, but contract claims are not.

In September 1989, renovation work stopped because of the non-payment of the subcontractors. HMC defaulted on its loan obligations, and Master Mortgage foreclosed on the property in February, 1990. Master Mortgage purchased the property at foreclosure sale. Because of the extensive damage to the interior of the hotel, Master Mortgage ceased hotel operations. On October 3, 1990, Master Mortgage instituted suit in Texas state court.

### DISCUSSION

#### A. Tort/Contract Based Dichotomy

Master Mortgage requested relief from this Court in Count II for negligent breach of contract, in Count III for negligent concealment of the insurance settlement, in Count IV for fraud by concealment, and in Count VIII for breach of the duty of good faith and fair dealing. Master Mortgage maintained that these causes of action sound in tort in which case they are timely. American National contended that the claims sounded in contract and are barred by the contractual limitation period.

Before delving into the major issue of the tort/contract dichotomy, Master Mortgage has argued that Counts II, III, IV, and VIII, whether they sound in contract or tort, are not "claims" within the meaning of the policy's two year contractual limitation period. The Court addressed the definition of "claim" as used in the limitation provision in its April Memorandum Opinion. The Court concluded that the term "claim" was used in "rather a generic fashion," and was sufficiently broad to include a claim for a breach of a contractual duty. In that opinion, the Court was faced only with Count I of Master Mortgage's complaint. The principle applies equal to the present dispute. If the claims asserted by Master Mortgage sound in contract, i.e., if they are primarily based on the failure to perform a contractual obligation, then they are "claims" barred by the two year limitation period.

Kansas recognizes a distinction between tort and contract claims. *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 552 P.2d 885, 888 (1976). In *Malone,* the Kansas Supreme Court stated:

[a] breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties.

*Id.* For Master Mortgage to state a claim upon which relief may be granted, it must claim an independent tort. The nature of the claim is determined from the pleadings and from the real nature and substance of the facts alleged therein. *Id.*

The general rule in Kansas is that an insurance company's duties arise by contract. *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 90 (1990) ("we rejected the idea that any insurance contract duties, whether the duty to defend, the duty to settle, or otherwise, are duties 'imposed by law.' We stated all such duties are duties 'arising under or imposed by agreement,' and, if breached, the action lies in contract"). The facts as alleged in Master Mortgage's complaint are insuffi-

cient to remove this case from the confines of the general rule.

The basic acts forming the foundation of the complaint were American National's settlement and payment of a roof loss claim without listing Master Mortgage as payee on the check and without notifying Master Mortgage of the settlement. The right to payment and to notice of a settlement were precisely those rights conferred by the loss payee clause of the insurance contract. Count I, the breach of contract claim previously dismissed, is based on American National's failure to pay Master Mortgage for the roof loss claim. Count II, negligent breach of contract claim, is based on American National's failure to pay Master Mortgage, albeit negligently. Count III, negligent concealment, is based on American National's negligent failure to notify Master Mortgage of its payment to HMC, and Count IV, fraud by concealment, is based on American National's intentional failure to notify Master Mortgage of the roof loss payment. Looking to the complaint, the real nature and substance of the claims sound in contract.

■ Master Mortgage argued that some actions sound in both contract and tort. Master Mortgage is correct that a hybrid cause of action does exist in Kansas sounding in both contract and tort, but only for the breach of an implied warranty. *See State ex rel. Stephan v. GAF Corp.*, 12 Kan.App.2d 123, 736 P.2d 465, 470 (Kan.App.1987), aff'd in part and rev'd in part on other grounds, 242 Kan. 152, 747 P.2d 1326 (1987). However, in a hybrid action, the plaintiff is required to elect a theory of recovery, primarily for the fixing of damages. *Id.* 736 P.2d at 470–71. Master Mortgage's complaint is not an implied warranty case. Assuming for the sake of argument that Master Mortgage has a hybrid action, it must elect a theory of recovery for the fixing of damages. In each count in the complaint, the damages sought are identical to the damages sought in Count I, the breach of contract claim. Thus, it may be said that Master Mortgage has opted for a contract theory of recovery on its hybrid action because it has requested the contract measure of damages. The claims would then be contractually based and barred by the contractual limitation provision of the insurance contract.

■ To demonstrate that its claims are tort claims or sound in both contract and tort, Master Mortgage relied principally on *Malone v. University of Kansas Medical Ctr.*, 220 Kan. 371, 552 P.2d 885. *Malone* involved a suit by a patient against a hospital for negligent treatment. Because the hospital had statutory immunity to tort and implied contract actions, the patient based her claim on a breach of an express contract. In denying relief, the court looked to real nature and substance of the complaint to find:

> [c]ertain duties and obligations are imposed upon physicians and hospitals by law. Breach of such duty by a physician is malpractice, and an action for damages for malpractice is one in tort, even though there was a contract, express or implied, for employment.

*Malone v. University of Kansas Medical Ctr.*, 220 Kan. 371, 552 P.2d at 888. The independent legal duty on doctors existed regardless of the existence of a contract. No similar independent legal duty has been imposed upon insurance companies. While the insurance industry is highly regulated, the nature of an insurer's duties to insureds and beneficiaries is contractual in Kansas. *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d at 89. *Malone* also stands for the proposition that a creatively drafted complaint will not permit a party to do indirectly that which it is unable to do directly. Since the gravamen of Master Mortgage's complaint is contractual, it must be barred.

Master Mortgage also relied upon *Garrett v. American Family Mut. Ins. Co.*, 520 S.W.2d 102 (Mo.App.1974) (applying Kansas law). *Garrett* involved an insurance company's interference with an agent's expirations which were the property of the agent by both custom and agreement. The court found a single cause of action sounding in both contract and tort, similar to Kansas implied warranty cases. *Id.* at 119. To the extent the Missouri Court granted a cause of action in tort for a breach of contract, the court misinterprets Kansas law.

### 1. Negligent Breach of Contract/Negligent Concealment

The manner in which a breach of contract occurs, whether intentionally or negligently, does not change its nature. The Supreme Court of Kansas has stated that:

[f]urther, it should not matter whether the breach of a bargained-for duty arises from inattention, a disagreement over the existence of the duty, a dispute over the nature of the duty, or a simple unwillingness to perform the duty. The parties by contract (or in the absence of an express provision, by implied rules evolved under contract analysis) have themselves defined the consequences of the breach. In the marketplace of contract, a breach is a breach is a breach—unless the parties choose to specify otherwise.

*Ford Motor Credit Co. v. Suburban Ford,* 237 Kan. 195, 699 P.2d 992, 998 (1985), cert. denied, 474 U.S. 995, 106 S.Ct. 409, 88 L.Ed.2d 360 (1985). The use of the term negligence does not alter the nature of the claims from those sounding in contract to those sounding in tort. *Juhnke v. Hess,* 211 Kan. 438, 506 P.2d 1142, 1145 (1973) ("It is true the petition also described such default as having negligently occurred but use of the term 'negligently' does not necessarily serve to translate the action into one sounding in tort"). The wrongful acts cited by Master Mortgage are the failure to pay and to inform. These duties were precisely those conveyed by the loss payee provision of the contract. Whether done intentionally or negligently, the acts are breaches of contract. Therefore, Counts II and III must be dismissed.

### 2. Fraud by Concealment

Under Kansas law, damages for breach of contract are limited to pecuniary losses sustained, and exemplary or punitive damages are not recoverable in the absence of an independent tort. *Guarantee Abstract & Title Co. v. Interstate Fire & Casualty Co.,* 232 Kan. 76, 652 P.2d 665, 667 (1982). A plaintiff who wishes to assert a cause of action for fraud in connection with a breach of contract must show that the independent tort of fraud caused damages beyond those suffered by the breach of contract. *Heller v. Martin,* 14 Kan.App.2d 48, 782 P.2d 1241, 1245 (1989). A breach of contract action cannot be metamorphosed into a fraud action merely by alleging reliance on representations that the contract will be performed. Entering a contract and willfully failing to perform is a breach of contract only. *See Ford Motor Credit Co. v. Suburban Ford,* 237 Kan. 195, 699 P.2d at 998. Where the facts alleged in a tort claim are the same as those alleged in a contract claim and where the measure of damages is the same, no claim based on an extracontractual tort duty is allowed. *Id.* at 999.

Master Mortgage's fraud complaint alleges virtually identical facts as those for the breach of contract. The alleged wrong, willful failure to inform Master Mortgage of the roof loss settlement, is identical to its breach of contract claim. The damages requested are also the same. Master Mortgage has alleged no additional injury. Therefore, no fraud claim may be maintained, and Count IV must be dismissed.

### 3. Breach of the Duty of Good Faith and Fair Dealing

Kansas does not recognize a tort for the breach of a duty of good faith and fair dealing. *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d at 89–90. While some Kansas cases have included language which uses tort concepts such as "negligence" and "good faith," the terms do not alter the claim's essential character as a contract claim. *See id. Glenn* involved a suit by an insured against his insurance company for its alleged failure to settle a case against the insured. The insured alleged, among other things, a count for the tortious breach of the duty of good faith and fair dealing. The court rejected the cause of action and stated:

[under previous decisions] [w]e referred to the terms "good faith," "fair dealing," "without negligence," and "due care" by observing "[a]ll of these terms are simply statements of the contractual obligation an insurer undertakes under a duty to defend. They do not create a new cause of action or authorize a different measure of damages. They merely seek to broaden the

conduct which constitutes breach of contract."

\* \* \* \* \* \*

Perhaps this contract/tort relationship has contributed to the confusion arising from our efforts to describe the duty of good faith and to identify the situations involving bad faith/negligent duty to settle and to defend. From *Bennett v. Conrady*, 180 Kan. 485, 305 P.2d 823 (1957), and *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969), forward, we have used "negligence," "due care," and other tort expressions to describe the *substance of what is a contract duty* (emphasis added).

*Id.* No independent tort action arises. Thus, Master Mortgage's claim for relief must be interpreted as a claim for breach of contract. As such, it is barred by the two year contractual limitation provision. Count VIII must be dismissed.

### B. Failure to State a Cause of Action

#### 1. Intentional Interference with Business Relationship

Master Mortgage, in Count V, alleged a claim for the intentional interference with a business relationship. American National argued that Master Mortgage has not introduced sufficient evidence to support this claim.

 Kansas has long recognized a cause of action in tort where a party, without justification, induces or otherwise causes a breach of contract. *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1115 (1986); Restatement (Second) of Torts, § 766 (1977). A third party beneficiary may maintain such a suit. *Phillips USA, Inc. v. Allflex USA, Inc.*, 1993 WESTLAW 191615, *1 (D.Kan. 1993) citing *Rouse v. Crum*, 169 Ga.App. 439, 313 S.E.2d 140, 142 (1984) (malicious interference with the right of a named beneficiary to insurance proceeds would fall within the scope of tortious interference with contractual relations). In determining the elements of a tortious interference claim, Kansas has adopted the approach of the Restatement (Second) of Torts, § 766. *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d at 1115. The elements of the claim are:

(1) the existence of a contract between the plaintiff and a third party; (2) knowledge of the contract on the defendant's part; (3) intentional interference with known contract rights without legal justification; and (4) resulting damage to the plaintiff.

*Phillips USA, Inc. v. Allflex USA, Inc.,* 1993 WESTLAW 191615, *1, citing *Brown Mackey College v. Graham,* 768 F.Supp. 1457, 1460 (D.Kan.1991), aff'd, 981 F.2d 1149 (10th Cir. 1992). Additionally, section 766 of the Restatement requires that the defendant wrongfully induce the third person not to perform his contractual obligations to the plaintiff. *See also Brown Mackey College v. Graham,* 768 F.Supp. at 1461 and 981 F.2d at 1152–53.

 Master Mortgage proved elements (1) and (2). The submission of the Deed of Trust into evidence showed a contract between Master Mortgage and HMC. Evidence indicated that American National knew that Master Mortgage was the mortgagee of the hotel property. Consequently, Master Mortgage knew of the existence of a contract between Master Mortgage and HMC. However, Master Mortgage has not satisfied element (3), (4) or the inducement requirement.

Element (3) requires *intentional* interference with *known* contractual rights. Master Mortgage failed to demonstrate any "intent" by American National to interfere in Master Mortgage's contract with HMC. While American National knew that a contract existed, no credible evidence indicated that American National knew any contract details beyond the mere existence of the mortgage relationship. Under element (4) *resulting* damage, although damage was sustained to the property, Master Mortgage was faced with a classic *Palsgraf* dilemma, but failed to demonstrate that American National's failure to include it as a loss payee on an insurance check was the proximate cause of the hotel damage. *See Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Additionally, there has been no evidence that American National induced HMC to breach its agreement with Master Mortgage. In fact, evidence indicated that HMC repeatedly breached obligations owed to Master Mort-

gage without the involvement of American National.

Master Mortgage has not satisfied the elements necessary for an intentional interference with a contract claim. Therefore, Count V must be dismissed.

### 2. Conversion

Count VI of Master Mortgage's complaint contained allegations of conversion. Master Mortgage argued that by naming only HMC on the check and delivering the check to HMC without notifying Master Mortgage, American National converted the proceeds of insurance which were rightfully Master Mortgage's as the loss payee. While American National recognized an obligation to Master Mortgage, it was one of debtor/creditor. In Kansas, American National argued, an action for the recovery of a debt may not be sustained as an action for conversion.

■ Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another." *Moore v. State Bank of Burden*, 240 Kan. 382, 729 P.2d 1205, 1210 (1986), cert. denied, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, 701 P.2d 934, 938 (1985). However, an action for conversion will not lie for the mere recovery of a debt. *Id.*

■ For example in *Temmen v. Kent–Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95, 97 (1980), the plaintiff purchased a used car from the defendant car dealership who was also plaintiff's employer. The defendant repaired plaintiff's car and deducted the cost of the repairs from the plaintiff's next paycheck without plaintiff's written authorization as required by Kansas law. The failure to receive written authorization constituted a breach of the employment contract. Plaintiff argued, inter alia, conversion. The court denied the plaintiff relief on the conversion theory stating:

> An action will not lie for conversion of a mere debt or chose in action. Hence where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conver-

sion of the funds representing the indebtedness will not lie against the debtor (citations omitted).

*Temmen v. Kent Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95. *Temmen* stands for the proposition that when one party is contractually obligated to pay a second party, if the first party wrongfully fails to pay the contract amount, then a breach of contract occurs, not a conversion. Contrast that with the situation where a party has entrusted another with specific property which is not returned as per contractual provisions. *See e.g. Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254 (1976). Master Mortgage's complaint is similar to that of the *Temmen* plaintiff. American National failed to list Master Mortgage as a payee on a check which it was required to do. This failure breached the insurance contract. American National withheld funds from Master Mortgage. Like the *Temmen* court, this Court concludes that the contractual relationship created a debtor/creditor relationship between the parties. Therefore, no action for conversion attends to this fact situation.

■ An action for conversion may be maintained for the conversion of a check or other negotiable instrument. *See Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, 701 P.2d at 938–39. Master Mortgage argues that American National, the check payor, converted the check because it made it payable only to HMC rather than to Master Mortgage. The cases cited by the plaintiff do not support this position because they address only disputes between payees, not between payor and payee. *See Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, 701 P.2d at 938 (dispute between owners and former owners of a business over a check payable to the business); *Aragon v. General Elec. Credit Corp.*, 89 N.M. 723, 557 P.2d 572, 574 (1976) (dispute between insured and loss payee over check payable jointly to both parties). American National is the payor and Master Mortgage is an unlisted payee. The essential relationship between a check payor and payee is one of debtor/creditor. Errors in the writing of the check amount to breaches of contract, and do not rise to the level of conversion.

The other cases cited by Master Mortgage are also inapplicable because they involved the entrustment of money or property with a defendant whose duty it was to safeguard the property. *See Drumm–Standish Comm'n Co. v. Farmers State Bank,* 132 Kan. 736, 297 P. 725, 726 (1931) (money deposited with defendant bank); *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254, 258–59 (1976) (home purchase price deposited with title company); and *Glenn Arms Assocs. v. Century Mortgage & Investment Corp.,* 680 P.2d 1315, 1317 (Colo.App. 1984) (money delivered to defendant to be placed in escrow). Master Mortgage never gave American National any property of any kind. Master Mortgage was a third party beneficiary to an insurance contract, and the transfer of the insurance check to HMC without listing Master Mortgage breached that contract.

Fundamentally, Master Mortgage argues that an insurance company (or any party to a contract) is liable for conversion whenever it fails to pay a claim or wrongfully pays a claim. The Court is unwilling to sweep the whole of contract law under the conversion carpet. A conversion action is not supportable under Kansas law on these facts. Kansas does not recognize a conversion action to recover a debt which is the present situation. Therefore, Count VI must be dismissed.

### 3. Breach of Fiduciary Duty

In Count VII, Master Mortgage alleged a breach of a fiduciary duty. Master Mortgage argued that it relied upon American National to protect its interests in claim settlements because American National occupied a superior position in the contractual relationship and exercised control over Master Mortgage property. American National responded that the facts do not give rise to a fiduciary duty, and Kansas law does not impose a fiduciary duty on an insurance company.

■■■■ The concept of the fiduciary duty is, at heart, an equitable one with no clearly defined boundaries. *Olson v. Harshman,* 233 Kan. 1055, 668 P.2d 147, 151 (1983). The existence of a fiduciary relationship depends on the facts and circumstances of each individual case. *Id.* The fiduciary relationship imparts:

> a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise, and does have and exercise influence over another. A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.

*Denison State Bank v. Madeira,* 230 Kan. 684, 230 Kan. 815, 640 P.2d 1235, 1241 (1982).

■■■■ As a general rule, Kansas does not recognize a fiduciary duty between an insurer and its insured. *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d at 89. The facts of this case do not take it out of the general rule and are insufficient to support a finding of a fiduciary relationship. There is no relationship of peculiar trust and confidence. American National did not act primarily for the benefit of Master Mortgage. The inequality under the contract does not of itself create a fiduciary duty, and Master Mortgage entrusted no property to American National.

■■■■ Both Master Mortgage and American National are sophisticated commercial actors. All the parties conducted arms-length transactions. Master Mortgage cannot be said to have a relationship in which "peculiar" confidence has been placed with American National. Master Mortgage's position was no different that any other American National policy beneficiary. Indeed, Master Mortgage required HMC to obtain insurance and name Master Mortgage the loss payee. A loss payee has no right separate from the insured; the loss payee acts as:

> merely an appointee to collect the insurance; consequently, he must claim in the right of the insured, and not in his own right.

5 Ronald A. Anderson, Couch on Insurance 2d § 29:66; *Vargas v. Nautilus,* 248 Kan. 881, 811 P.2d 868, 873 (1991) citing 5 Couch on Insurance 2d § 29:66. Master Mortgage

could have required HMC to obtain an insurance policy with a "standard" or "union" mortgage clause which creates an independent contract with the insurer that is not subject to defenses available against the mortgagor. *See* 5 Couch on Insurance 2d § 29.65. A standard or union mortgage clause creates "distinct and dissimilar rights" in the mortgagor and mortgagee. *Id.* Master Mortgage could have required a HMC to obtain a direct contractual relationship with American National for it, but Master Mortgage chose not to take this action.

■ Nor do the facts support a conclusion that American National had to act primarily for the benefit of Master Mortgage. An insurance company's negotiations and settlement of claims with its insured are not primarily for the benefit of a third party beneficiary. An insurance company seeks to minimize *its own liability* and still provide fair and reasonable compensation for the insured's loss.

Master Mortgage argued that it was in an inferior position to American National because of the nature of their contractual relationship and was forced to rely on American National to protect its interest. The fact that parties had bargained for inequality does not bootstrap the contract into a fiduciary relationship. In *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1184 (D.Kan.1990), the court held that when there is a contract between:

> equally sophisticated business entities, [the court was] not prepared to impose heightened legal duties on one of the parties simply because that party may have more powers and discretion under the express terms of the agreement.

This Court is equally reluctant to extend the concept of fiduciary duty.

■ Finally, Master Mortgage entrusted no property to American National. Master Mortgage seemed to argue that its right to receive payment as a loss payee was a property right over which American National exerted control. This position is unfounded. For example in a sale of goods under the U.C.C., no property rights attach until the goods are identified to the contract, and even then only a "special" property right attaches by statute. *See* K.S.A. § 84-2-501 (1992).

Certainly, no property right attaches to money that should be paid under a contract until such money is actually paid. Thus, Master Mortgage entrusted no property to American National. The principal case relied upon by Master Mortgage, *Ford v. Guarantee Abstract and Title Co., Inc.*, 220 Kan. 244, 553 P.2d 254, is inapplicable because it is essentially a property entrustment case with agency overtones in which the plaintiff deposited a sum of money with the defendant who was to act as an escrow agent. There was no entrustment nor agency in the present situation.

Therefore, an action for the breach of a fiduciary duty is insupportable under Kansas law on these facts. Master Mortgage's arguments would have the effect of making insurance companies the fiduciaries of all their policy holders. Such a conclusion should be left up to the legislature of Kansas. Count VII must be dismissed.

### CONCLUSION

For the reasons stated above, American National's "Motion for Judgment on Partial Findings of Fact" as to Counts II, III, IV, V, VI, VII, and VIII is hereby GRANTED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052.

SO ORDERED.