No. 92,112

JENNIFER R. BOMHOFF, *Appellant,* v. NELNET LOAN SERVICES, INC., *Appellee.*

109 P.3d 1241

Opinion filed April 22, 2005.

*Phillip L. Turner,* of Turner & Turner, of Topeka, argued the cause, and *Dan E. Turner,* of the same firm, was with him on the brief for appellant.

*Kurt D. Maahs,* of Morrow, Willnauer & Klosterman, L.L.C., of Kansas City, Missouri, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Jennifer Bomhoff sued Nelnet Loan Services, Inc., (Nelnet) for conversion, fraud, breach of contract, and violations of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, because of Nelnet's actions regarding her student loan. Specifically, she alleged that Nelnet acted contrary to her written instructions to apply all of a $1,000 prepayment to the loan principal by instead first applying $193.40 to accrued interest, with the balance to principal. The district court granted Nelnet's motion for summary judgment on all causes of action. Bomhoff appealed, and

this court transferred the case from the Court of Appeals pursuant to K.S.A. 20-3018(c).

The sole issue on appeal is whether the district court erred in granting summary judgment to Nelnet. We hold the court did not err, and its judgment is affirmed.

## FACTS

The material facts are not in dispute. On June 16, 1997, Bomhoff signed a Consolidation Loan Application / Promissory Note (the Note) to consolidate her student loans with Nelnet. The Note included a section titled "Promise to Pay," which stated:

"**13. PROMISE TO PAY:** I promise to pay to the order of the lender named below such loan amount as is advanced on my behalf, plus simple interest on the unpaid principal balance at the rate described on the reverse side of this note. I will pay such amount in accordance with the Disclosure Statement and Repayment Schedule which will be furnished to me at the time my present obligations are discharged."

The Note also contained the following provisions:

"**A. GENERAL**
"I understand that the lender has applied for guarantee coverage of this loan through the Nebraska Student Loan Program, Inc. and because of this, *the loan is subject to, and the terms of this Promissory Note will be interpreted, in accordance with Title IV, Part B of the Higher Education Act of 1965, as amended, (the "Act"), federal regulation adopted under the Act, and the Rules and Regulations of NSLP.* To the extent not governed by federal law, this Note shall be governed by the laws of the jurisdiction in which the lender is located.

"**B. DISCLOSURE STATEMENT AND REPAYMENT SCHEDULE**
"I understand that I will receive a Disclosure Statement and Repayment Schedule which will identify my actual Loan Amount (as determined by the lender), interest rate, fee amounts, due dates and itemization of loans consolidated. This will be provided to me at the time my present creditors have discharged my obligations on the loans selected for consolidation. If after receiving my Disclosure Statement and Repayment Schedule I have any questions concerning the information contained in this Note, I will contact the lender. If the information on the Disclosure Statement conflicts with the Application/Promissory Note, the Disclosure Statement and Repayment Schedule shall be controlling.

. . . .

"**G. PREPAYMENT**
"At my option and without penalty, I may prepay at any time all or any part of the unpaid principal balance of the Note. In the event of prepayment, I will be

entitled to a refund of any unearned interest which I have paid. The amount of any such rebate will be computed by the same method by which interest payments were computed." (Emphasis added.)

Two months later on August 19, 1997, Bomhoff was provided a Disclosure Statement and Repayment Schedule. The original principal amount of the loan was $19,902.38; the annual interest rate was 8%; and the first payment was due September 24, 1997.

For the approximate 2-year period from September 24, 1997, until December 24, 1999, Bomhoff made the equivalent of only nine scheduled monthly payments and was granted three separate periods of forbearance covering the remaining time. During the forbearance periods, interest accrued on the principal, but no payments were due. At the end of each forbearance period, the accrued but unpaid interest was capitalized, *i.e.*, added to the principal pursuant to 34 C.F.R. § 682.202(b) (2004), and new repayment schedules were calculated and sent to Bomhoff.

Bomhoff's last forbearance period ended November 24, 1999. Due to capitalization of accrued but unpaid interest, her principal at that time had increased to $22,340.95. From that point forward, she paid at least the scheduled monthly amounts of $166.31 such that by January 1, 2002, the principal was reduced to $21,146.69.

Prior to January 1, 2002, all account statements mailed by Nelnet to Bomhoff contained the following language:

"**Application of Payments:** *Payments are applied first to outstanding interest, the remainder is applied to the principal balance. The amount of interest paid in each payment varies based on your principal balance and the number of days between payments. Interest continues to accrue until your account is paid in full.*
. . . .

"**Prepayment:** *You may prepay all or part of your account at any time.* UNLESS WE RECEIVE OTHER DIRECTIONS FROM YOU, *any prepayment made while your account is in repayment status, will advance your payment due date. For each full monthly payment received, your payment due date will be advanced by one month.* If the prepayment amount does not equal at least the amount of one full monthly payment, such additional 'partial' payments will be accumulated and will advance your due date once they equal at least one full monthly payment. Payments made with this coupon will be applied only to loans showing a total amount due on this statement. By making prepayments, your loan will likely be paid off early, reducing the total interest paid on your loan. If you would like to pay your account in full, please call us for a payoff amount." (Emphasis added.)

All account statements mailed by Nelnet to Bomhoff after January 1, 2002, contained language similar to these earlier account statements:

"We calculate interest using the daily simple interest method. *Interest accrues daily on your outstanding principal balance. The amount of interest that accrues on your loan(s) depends on your principal balance and the number of days between payments. We apply each payment to your principal balance only after all interest and outstanding fees are paid.*" (Emphasis added.)

The new account statements also contained the following:

"If you send a greater payment than is due, we will apply the additional amount to your principal balance. Unless you instruct otherwise, we will advance your due date one month for each full and partial payment received that equals one full monthly payment."

After receiving her January 3, 2002, account statement, Bomhoff made a $200 payment on January 14. Nelnet calculated the interest on the loan by multiplying the daily interest rate (8% per year / 365.25 days per year) by the outstanding principal, and then multiplying by the number of days since the previous payment. Twenty-eight days had passed since her last payment (December 17), resulting in accrued interest of $129.69. Accordingly, $129.69 was applied toward the accrued interest. Since the payment was larger than the regularly scheduled amount, a greater amount than usual ($70.31) was able to be applied toward principal. The payment reduced the outstanding principal to $21,076.38.

Similarly, the following month, on February 15, Bomhoff made a payment of $200. Thirty-two days had passed since her last payment (January 14), resulting in accrued interest of $147.72. Accordingly, $147.72 of her payment was applied toward the accrued interest, and the remaining $52.28 was applied toward the outstanding principal, leaving a balance of $21,024.10.

Bomhoff later received her March 3 account statement which confirmed "payment received since last statement" of $200 and the current principal balance of $21,024.10. It also showed estimated accrued interest of $170.37 and a scheduled payment of $185.09. Since Bomhoff had frequently been making payments greater than the required monthly amounts, pursuant to the stan-

dard language in the recent account statements it also showed an extended payment due date of June 24, 2002. It additionally showed: "Total Payment Due: $0.00."

After receiving the March 3 account statement, Bomhoff made a payment which is at the center of this appeal. She sent Nelnet a $1,000 payment along with a note which stated: "PLEASE APPLY THIS 1000 TOWARD THE PRINCIPLE [sic] ON LOAN # XXX-XX-7435." As of Nelnet's receipt of the $1,000 on March 29, 42 days had passed since her previous payment (February 15), resulting in accrued interest of $193.40. Accordingly, Nelnet applied $193.40 toward the accrued interest and the remaining $806.60 toward the principal. The payment reduced the outstanding principal to $20,217.50.

As a result of Nelnet's receipt of Bomhoff's $1,000, her April 3 account statement disclosed that the regular payment due date had again been extended — this time to November 24, 2002, — and the "Total Payment Due" was $0. It also showed a "payment received since last statement" of $1,000, a current principal balance of $20,217.50, estimated accrued interest of $115.13, and scheduled payment of $185.09.

After Bomhoff learned Nelnet had not applied the full $1,000 to principal, she filed suit on August 19, 2002. She claimed that the payments made in addition to her scheduled monthly payments were not deducted from the loan's outstanding principal but were used instead by Nelnet to extend the due dates on the next payments in order for Nelnet to wrongfully collect interest income. On February 27, 2004, the district court granted Nelnet's motion for summary judgment on all claims.

## ANALYSIS

Issue: *Did the district court err in granting summary judgment to Nelnet on all claims?*

*Standard of Review*

The facts are undisputed, and our decision requires us to interpret and give legal effect to written instruments and federal regulations. Our standard of review of the district court's grant of

summary judgment is therefore de novo. *Stone v. U.S.D. No. 222,* 278 Kan. 166, 178-79, 91 P.3d 1194 (2004) (written instruments). See *State v. Strand,* 261 Kan. 895, 897, 933 P.2d 713 (1997) (When an administrative agency has not interpreted its own regulations, the doctrine of operative construction has no application, and this court's review is unlimited.).

*Discussion*

Bomhoff argues Nelnet's conduct was actionable as conversion, fraud, and violations of the KCPA; she has abandoned the breach of contract claim on appeal.

At the outset, we observe that paragraph A of the original promissory note provided that it was subject to, and to be interpreted in accordance with, Title IV, Part B of the Higher Education Act of 1965, as amended, federal regulations adopted under the Act, and the Rules and Regulations of the Nebraska Student Loan Program. The federal regulations adopted under the Act, specifically 34 C.F.R. § 682.209 (2004), are central to the analysis of all of Bomhoff's contentions on appeal. That regulation states in relevant part:

"(b) Payment application and prepayment.

(1) *The lender may credit the entire payment amount first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal.*

(2)(i) *The borrower may prepay the whole or any part of a loan at any time without penalty.*

(ii) If the prepayment amount equals or exceeds the monthly payment amount under the repayment schedule established for the loan, *the lender shall apply the prepayment to future installments by advancing the next payment due date, unless the borrower requests otherwise.* The lender must either inform the borrower in advance using a prominent statement in the borrower coupon book or billing statement that any additional full payment amounts submitted without instructions to the lender as to their handling will be applied to future scheduled payments with the borrower's next scheduled payment due date advanced consistent with the number of additional payments received, or provide a notification to the borrower after the payments are received informing the borrower that the payments have been so applied and the date of the borrower's next scheduled payment due date. Information related to next scheduled payment due date need not be provided to borrower's making such prepayments while in an in-school, grace, deferment, or forbearance period when payments are not due." (Emphasis added.)

## A. *Conversion*

The district court held:

"Plaintiff alleges conversion due to Defendant's application of plaintiff's payment first to accrued interest, then principal. As a matter of law, even were there an erroneous application of funds tendered to Defendant, it would not constitute conversion. *Moore v. State Bank of Burden*, 240 Kan. 382.

"The Court finds as a matter of law there is no viable claim for conversion and summary judgment is granted in favor of the Defendant on that claim."

We agree with the district court but need not reach the conversion issue as it was particularly analyzed in *Moore, i.e.*, an erroneous application of funds, because other grounds affirm the district court's decision. See *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, Syl. ¶ 3, 863 P.2d 364 (1993) (district court's reasons for its decisions are immaterial if ruling was correct for any reason).

Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. *Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, Syl. ¶ 2, 701 P.2d 934 (1985). Checks can be converted. *Carmichael*, 237 Kan. at 501-02. However, with the Note's reference to the loan being "subject to" the federal regulations regarding student loans, it expressly authorized Nelnet to apply the check funds to interest first. 34 C.F.R. § 682.209(b)(1) provides: "The lender may credit the entire payment amount first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal."

Bomhoff was reminded of this authority in the account statements: "Payments are applied first to outstanding interest, the remainder is applied to the principal balance."

Consequently, Nelnet did not convert any of Bomhoff's funds because it did precisely what Bomhoff authorized it to do: apply the $1,000 payment first to any outstanding interest and then to outstanding principal.

## B. *Fraud*

The district court held:

"Plaintiff alleges Defendant committed fraud by improperly crediting the Plaintiff's account and issuing a statement showing prepayment of a monthly loan amount. There are no specific allegations as to fraudulent behavior.

"The uncontroverted facts establish that Defendant's actions in handling Plaintiff's payments were in accordance with the mandates established by Federal law. 34 C.F.R. 682.209[b](2)(ii).

"There is no evidence of an untrue statement of fact or any statement by Defendant to deceive Defendant.

"The Court finds that the uncontroverted facts taken in a light most favorable to the Plaintiff, do not disclose any actual or constructive intent on the part of the Defendant to commit fraud upon the Plaintiff.

"Defendant complied with Federal law. 34 C.F.R. 682.209[b](2)(ii).

"The Court grants Defendant's motion for summary judgment on the issue of fraud."

We agree with the district court's stated reasons.

First, "[t]he elements of an action for fraud include [1] an untrue statement of fact, [2] known to be untrue by the party making it, [3] made with the intent to deceive or with reckless disregard for the truth, [4] upon which another party justifiably relies and [5] acts to his or her detriment." *Alires v. McGehee*, 277 Kan. 398, Syl. ¶ 3, 85 P.3d 1191 (2004).

Although Bomhoff was told that her next payment was due on June 24, 2002, she fails to show that this was an untrue statement of fact. Summary judgment was therefore proper. See *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998) (A defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of the plaintiff's case.).

Second, we observe that because the $1,000 payment on March 29 "equals or exceeds the monthly payment amount under the repayment schedule established for the loan, the lender *shall* apply the prepayment to future installments *by advancing the next payment due date, unless the borrower requests otherwise.*" (Emphasis added.) 34 C.F.R. § 682.209(b)(2)(ii).

Indeed, we observe that Nelnet and Bomhoff each proceeded according to the federal regulations. With Bomhoff's $1,000, she prepaid "part of a loan any time without penalty." 34 C.F.R. § 682.209(b)(2)(i). Next, Nelnet credited "the entire payment amount . . . to any outstanding interest and then to outstanding principal." § 682.209(b)(1). Nelnet then applied "the prepayment to future installments by advancing the next payment due date,

unless the borrower requests otherwise." § 682.209(b)(2)(ii). Accordingly, Bomhoff fails to show how this constitutes fraud.

We also agree with the district court's conclusions for reasons it did not articulate.

First, contrary to Bomhoff's apparent argument, by extending the due date 5 months— from June 24 to November 24—Nelnet did not simply apply the $1,000 to eliminate five future installment payments of identical amounts. In other words, the $1,000 payment was not the equivalent of five checks of $200 each being paid on each month's due date. Instead, Nelnet paid off the accrued interest to date ($193.40), and then was able to apply the balance ($806.60) all to principal. By reducing the principal in such an amount, the result was a significant savings in accrued interest— on that new principal amount—to Bomhoff through the remaining 12-year life of the loan.

We note that the extension of the payment due dates is apparently done as a courtesy to the student loan borrower, which allows the borrower to be temporarily relieved from making the regular monthly payments in addition to his or her extra lump sum payment.

Second, despite Bomhoff's argument, an account statement providing that no payment is due is not the equivalent of stating that no interest accrues on the account during the time no payment is due. The account statements notify her to the contrary: "[I]nterest accrues daily on the outstanding principal balance. The amount of interest that accrues . . . depends on your principal balance and the number of days between payments."

## C. Violations of the KCPA

Finally, Bomhoff argues that Nelnet's application of the $1,000 payment first to interest, as well as its extension of due dates, were deceptive and unconscionable practices. She contends that the issue of deceptive acts is a question of fact to be submitted to the jury and implies that it is not a proper claim for summary judgment.

The district court held:

"Plaintiff similarly claims Defendant violated the Kansas Consumer Protection Act (K.S.A. 50-626 and 50-627) by improperly reducing the outstanding principal instead of extending the payment due date on the loan.

"The Court finds by the uncontroverted facts herein, that Defendant acted in accordance with Federal law which mandated it apply the prepayments to future installments. 34 C.F.R. 682.209[b](2)(ii). Accordingly, the Court finds Defendant's conduct does not rise to the standard of deceptive conduct as proscribed by the intent of the Kansas Consumer Protection Act. Therefore, as a matter of law, Defendant's motion for summary judgment is granted dismissing plaintiff's claims under the Consumer Protection Act."

We agree with the district court.

We acknowledge that K.S.A. 50-626(a) provides: "No supplier shall engage in any deceptive act or practice in connection with a consumer transaction." The statute then goes on to provide a nonexhaustive list of deceptive acts and practices.

Similarly, K.S.A. 50-627(a) provides: "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction." The statute then goes on to provide a nonexhaustive list of unconscionable acts and practices.

However, summary judgment is appropriate if there is no evidence of deceptive or unconscionable acts. *Gonzales v. Associates Financial Serv. Co. of Kansas*, 266 Kan. 141, 166, 967 P.2d 312 (1998); see *Stair v. Gaylord*, 232 Kan. 765, 775-76, 659 P.2d 178 (1983) (directed verdict for defendant on K.S.A. 50-626[b][3] and K.S.A. 50-627[b]; KCPA claims affirmed because no evidence of deceptive or unconscionable acts presented, reversed on other KCPA claims).

In the instant case, Bomhoff presents no evidence that Nelnet engaged in a deceptive or unconscionable act or practice. Under 34 C.F.R. § 682.209(b), Nelnet was not only entitled to apply the $1,000 payment first to outstanding interest but was also required to extend the payment due dates on the loan. The provisions, (b)(1) and (b)(2)(ii), are not mutually exclusive.

Affirmed.

GERNON, J., not participating.
LARSON, S.J., assigned.